CLANEBACH, INC., et al., Appellants,

v.

LAS VEGAS LOCAL JOINT EXECUTIVE BOARD OF CULINARY WORKERS AND BARTENDERS, etc., et al., Appellees.

No. 21505.

United States Court of Appeals Ninth Circuit.

Jan. 25, 1968.

David Goldwater (argued), Jones, Wiener & Jones, Las Vegas, Nev., for appellants.

Roland C. Davis (argued), of Carroll, Davis, Burdick & McDonough, San Francisco, Cal., Joseph Crawford, Las Vegas, Nev., for appellees.

Before HAMLEY and ELY, Circuit Judges, and ZIRPOLI, District Judge.

ZIRPOLI, District Judge.

Appellants, respondents below, appeal from a district court order compelling arbitration of a dispute arising out of a 1964 collective bargaining agreement.

Appellants are gambling clubs in Las Vegas, Nevada, commonly known as downtown clubs, as distinguished from the larger hotels on the Las Vegas Strip. Appellees are two unions which represent a substantial number of the employees in both the downtown clubs and Strip hotels.

Appellants and appellees were party to a collective bargaining agreement which took effect on April 1, 1964. The provision of the contract which led to this case is paragraph six of section 2(e), which provision reads as follows:

The Employer and the Union agree that all employees working under classifications listed in this Agreement are properly within the bargaining unit. Any classification established by the Employer not listed in this Agreement where the employees perform duties covered by this Agreement shall be a part of this Agreement at a wage rate comparable to related job classifications.

Employees commonly referred to as change girls and booth cashiers were not specifically classified in the 1964 agreement. Appellees contend that section 2 (e) required appellants to bargain to establish comparable wage rates for those employees. Appellants contend that section 2(e), when read in conjunction with section 1[1] of the agreement, is not susceptible of the interpretation which appellees attach to it. When appellants refused to negotiate rates, appellees petitioned the district court for an order compelling arbitration pursuant to section 19[2] of the agreement, a broad arbitration clause.

The parties' arguments on appeal raise three questions: (1) Is this dispute arbitrable? (2) Are some of the appellants estopped from denying that the employees referred to were covered by the contract and that bargaining was required? (3) Did the district court err in its admitting evidence of the collective bargaining history of other employers?

---

1. Section 1:
JURISDICTION AND RECOGNITION: The Employer agrees to recognize the Union as the sole collective bargaining agency for its employees working under the Union's jurisdiction for the purpose of collective bargaining. It is further agreed by both parties herto [sic] that this Agreement shall cover all the working conditions, wages and hours of employment affecting the employee working in the Employer's establishment.

2. Section 19:
ARBITRATION — GRIEVANCES: Any complaints of alleged violations and grievances under this Agreement will first be handled with the individual Employer. In the event the Business Representative of the Union and the Employer are unable to adjust said grievance or misunderstanding within forty-eight (48) hours, said grievance shall be referred to the [arbitrator] * * *.

## (1) ARBITRABILITY

Appellants contend that change girls and booth cashiers were not intended to be and were not covered by the 1964 agreement. Appellees conclude otherwise. The inquiry of the courts is limited to determining whether the dispute is conceivably governed by the contract and whether the parties agreed to arbitrate it. See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The court holds that the claims of each party are at least colorable and are not frivolous, hence arbitration was proper·unless there are special considerations arising from appellants' characterization of the dispute.

Appellants contend that to submit the issue of the coverage of the contract to arbitration would be to submit a "purely representational issue" and that such questions are within the exclusive jurisdiction of the National Labor Relations Board. Hence, appellants assert that the district court lacked jurisdiction to order arbitration on the facts of this case. Appellees contend that the issue for the arbitrator is merely the interpretation of the contract.

Appellants concede that there is some concurrent jurisdiction, between the N.L.R.B. and the federal courts, when "representational" disputes are involved. Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). But appellants would distinguish Carey on the ground that Carey was a case involving work assignments and was not a "pure representational dispute". In Carey, however, the Court said:

> If this is truly a representation case, either [union or employer] * * * can move to have the certificate clarified. But the existence of a remedy before the [National Labor Relations] Board for an unfair labor practice does not bar individual employees from seeking damages for breach of a collective bargaining agreement in a state court

* * *. We think the same policy considerations are applicable here; and that a suit either in the federal courts * * * or before such state tribunals as are authorized to act * * * is proper, even though an alternative remedy before the Board is available, which, if invoked by the employer, will protect him. 375 U.S. at 268, 84 S.Ct. at 407.

The Court also stressed that the characterization of disputes as representational or otherwise necessitates the drawing of fine lines which may be of little practical significance. Moreover, even should the Board have to act, there may still be "work for the arbiter". 375 U.S. at 271, 84 S.Ct. 401. In the case at bar, the arbitrator may construe his authority under the agreement to include the actual determination of rates, the setting of time schedules for negotiations, or the determination of other matters. Cf., Lodge No. 12, District No. 37, International Ass'n of Machinists v. Cameron Iron Works, Inc., 292 F.2d 112 (5th Cir. 1961). There may be work for an arbitrator even if there is work for the Board.

If we affirm the order compelling arbitration, all parties are free to seek any appropriate relief before the National Labor Relations Board. The Board may defer to the arbitration award, or, if contrary to national labor law and policy, may modify or vacate it. We can perceive no prejudice to any party that will flow from arbitration. That fact, coupled with the strong federal policy of encouraging arbitration as a means of settling labor disputes, is further support for deciding that Carey's broad language is applicable to the facts of this case.

Appellants rely heavily on International Union of Doll & Toy Workers of United States and Canada * * * v. Metal Polishers, Buffers, Platers & Helpers International Union * * *, 180 F.Supp. 280 (S.D.Cal.1960), and assert that it stands for the proposition that the district court in the case before us lacked jurisdiction to order arbitration. Their reliance is misplaced. We do not think the case stands for the proposition that

the district court lacked jurisdiction. In the *Metal Polishers* case plaintiffs sought specific enforcement of an arbitration award which was inconsistent with a prior N.L.R.B. election and certification. To enforce the award would have been to disregard and flout the N.L.R.B.'s jurisdiction. No such situation is presented by the case at hand, in which the N.L.R.B. may vacate or modify any award made, there is no conflict between arbitration and N.L.R.B. jurisdiction, and it is quite doubtful that the issue is a purely representational issue with which the N.L.R.B. would be concerned. Moreover, the *Metal Polishers* case did not involve a collective bargaining agreement between employer and union, but rather involved a non-raiding agreement between two unions, and the court there said "collective bargaining agreements and non-raiding agreements would seem to stand on decidedly different footings, at least in the context of the purposes for which § 301(a) * * * was enacted." 180 F.Supp. at 284.

■ To order arbitration is to give due respect to the agreement of the parties and to recognize the importance and usefulness of arbitration in the settlement of industrial disputes. See United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); see also United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

■ We hold that sections 2(e) and 19 of the parties' collective bargaining agreement support the district court's order in this case. We further hold that no bar to arbitration arises because the dispute may be characterized as representational. Our conclusion is supported by the National Labor Relations Board proceeding entitled Raley's, Inc. d. b. a. Raley's Supermarkets and Building Service Employees Int'l Union 22, AFL–CIO, 143 N.L.R.B. 256 (1963). *Raley's* was a

case where union A and the employer had arbitrated whether janitors and bottle sorters were covered by the collective bargaining agreement. The arbitrator found that they were. Union B petitioned the N.L.R.B. for a representation election and the Board held that the arbitration award, based on the interpretation of the contract, was acceptable to the Board and that it furthered national labor policy. Hence, the Board, relying on the award, found that the contract operated as a bar to any election concerning the disputed employees. The arbitration had been ordered by a state court.

We might add that we are not convinced that this matter is properly characterized as "representational" in the sense that there would be N.L.R.B. concern with which of two unions is entitled to represent particular employees. Rather, the issue is whether the employer must bargain concerning a particular incident of employment—wages. If the employer seriously wants to contest whether the appellees represent the employees, the parties are free to seek appropriate relief before the Board.

Hence, whether we characterize the dispute as representational or not, arbitration was and is proper, and the district court was correct in so finding.

### (2) ESTOPPEL

■ Appellees assert that six of the appellants are estopped from denying that appellees are the proper representatives of the change girls and booth cashiers. The basis of the estoppel is a prior proceeding before the National Labor Relations Board: El Dorado, Inc., et al., and American Federation of Casino and Gaming Employees, 151 N.L.R.B. 579 (1965). In that proceeding the petitioning union, American Federation of Casino and Gaming Employees, sought representation of change girls and booth cashiers in the clubs of some of the appellants in this case. The Board determined, after contested litigation on the merits, that "a 1964 contract [between the two unions which are appellees in the case at bar and

five[3] downtown clubs which are the appellants here] * * * operates as a bar to the inclusion of change girls and change booth cashiers" within any unit sought to be represented by the American Federation of Casino and Gaming Employees. 151 N.L.R.B. at 584.

At the outset, we note that the Board proceeding did *not* determine the crucial issue which appellees seek to arbitrate; namely, whether section 2(e) requires bargaining to establish wage rates. The N.L.R.B. proceeding did not construe section 2(e). Hence, there can be no estoppel as to that issue.

We have already determined that whatever argument appellants may make with respect to the representational nature of this issue, that arbitration is proper. Hence, we deem it unnecessary to decide whether some of the appellants are estopped in this court from making a representational argument, for whatever we might conclude on this issue would not affect our decision in this case.

■ As for any possible claim that appellants should be estopped in the arbitration proceeding from raising, as a reason for not arbitrating, the issue of appellants' representation of the employees we do not think it is our function to set forth the procedural rules of the arbitration proceeding. That is the function of the arbitrator, which, presumably, he will exercise according to the terms of the contract. Perhaps the parties' agreement will be construed to provide for some form of collateral estoppel on facts as they exist in this case. Perhaps the N.L.R.B. will consider the procedures of the arbitration proceeding in any subsequent recognition which may be sought of the award. But those are not questions that concern us now. We cannot presume the arbitrator will act beyond his authority. Whether collateral estoppel applies as a procedural device in the parties' arbitration procedures is not a question for this court at this time.

## (3) EVIDENCE OF BARGAINING HISTORY OF OTHERS

Appellees allege, and appellants admit, that the custom and practice—the procedure usually followed—in Las Vegas bargaining is as follows: Appellees negotiate a contract with the hotels on the Las Vegas Strip, the large, well known hotels. Subsequently, the parties in this case adopt that contract as their own basic agreement. On that theory, the district court admitted the collective bargaining history of the Strip hotels as probative of the intent and/or understanding of the parties in this case. Appellants argue that the admission of the evidence was improper because it was irrelevant and because they were not bound by any agreement to which they were not a party. The significance of the evidence was that testimony indicated that the Strip agreement specifically provided for change girl and booth cashier representation, as evidenced by memorandum agreements signed subsequent to the initial contract. R.T. 93–95, 215–17. Appellants conclude that the only question which was before the district court was whether the parties' agreement was susceptible, on its face, to appellees' construction and hence whether arbitration was proper.

Because we have determined above that an arbitrable dispute did exist from the face of the agreement itself, we find it unnecessary to determine whether to admit the collective bargaining history of non-parties was to admit irrelevant evidence, and hence whether any reversible error was committed.

For the reasons set forth above, the order of the district court is

Affirmed.

---

3. The employees in the sixth appellant's club were not sought to be included in the unit, hence, no decision on the merits, in the sense required for collateral estoppel to operate, was made. 151 N.L.R.B. at 584 n. 17 and accompanying text.