In the Matter of WILLIAM E. LEWIS, as President of Suffolk Chapter, Civil Service Employees Association, Inc., et al., Appellants, v COUNTY OF SUFFOLK et al., Respondents.

Second Department, August 20, 1979

### APPEARANCES OF COUNSEL

*Lester B. Lipkind* for appellants.

*Howard E. Pachman, County Attorney (Leonard S. Kimmel* of counsel), for County of Suffolk, respondent.

### OPINION OF THE COURT

SHAPIRO, J.

In a proceeding to confirm an arbitration award pursuant to CPLR 7510, and to restrain the arbitrator from conducting any further hearings (contrary to the arbitrator's postaward decision to reopen the hearing for the taking of further evidence), wherein respondents cross-petitioned, *inter alia,* to vacate the award pursuant to CPLR 7511, petitioners appeal from so much of a judgment as denied their application to confirm the award and permitted the arbitrator to hold further hearings "in order to consider additional crucial evidence material to the controversy."

#### THE FACTS

The individual petitioners are employees of the County of Suffolk. They filed grievances pursuant to the collective bargaining agreement between the Suffolk Chapter of the Civil Service Employees Association (CSEA) and the county which was confirmed by Resolution No. 816-1976 of the Suffolk County Legislature adopted November 9, 1976, vetoed by the Suffolk County Executive on November 11, 1976 and overridden by the Legislature on November 23, 1976. The resolution and agreement postponed payment of part of the agreed increases of salary and increment to stated dates in 1977.

Almost immediately thereafter the County Executive took

the position that the resolution was not valid as to that part of the payments provided therein to be made in 1977. He claimed that the right of a municipal legislative body to establish conditions of employment is limited to the single year of the contract impasse which, in this case, was 1976 (see Civil Service Law, § 209, subd 3, par [e], cl [iv]).

In December, 1976 the CSEA was requested to commence negotiations with the county for a new collective bargaining agreement to cover 1977. The CSEA agreed and negotiations were thereafter commenced which culminated in a new collective bargaining agreement covering the years 1977-1980. Meanwhile, the county refused to honor the afore-mentioned portion of the payments due in 1977 under the 1976 agreement. The petitioners thereupon filed grievances which culminated in an arbitration hearing before respondent House on January 10, 1978. In his award dated March 28, 1978, the arbitrator determined that the county was required to make such payments. The essential portions of his opinion to that effect were as follows:

"The County's contention on the merits is that the monies claimed by the Grievants are not required by the 1977 Agreement, the only Agreement applicable for the time at which they were to be paid; that the 1977 Agreement had the effect of negating the promise made in the Legislature's Agreement, and that that promise was beyond the authority of the Legislature.

"The Union argues that there is nothing in the 1977 Agreement or in law which negates the effectiveness of the applicable parts of the 1976 Legislature's Agreement * * *

"The 1977-80 Agreement on its face appears to change only those parts of the Legislature's Agreement for which it provides substitute provisions; and those are provisions for *changes* to be effective in the year 1977 for which there were provisions in the Legislature's Agreement in addition to those provided therein for the year 1976. The 1977-80 Agreement, however, does not explicitly provide for any changes or alternatives to the provisions in the Legislature's Agreement *for 1976 increments or 1976 salary adjustments,* or for the time schedule for paying these to the eligible employees.

"The County appears to rely for its defense on the assertion in the February 28th rejection letter [wherein was stated the County Executive's position that the County Legislature could not impose a contract for a period beyond 1976].

*"But the County has offered nothing but its assertion to prove that the provisions in paragraph 2 and 4 for deferral of part of the 1976 increments and salary adjustments were 'illegal and contrary to the Taylor Act,' or that they were intended to be eliminated by the 1977 Agreement. Such claims are not so clearly valid as to require no proof* [emphasis supplied.]* * * *

"I hold that * * * the Legislature's Agreement survives and is not amended or changed by the 1977-80 Agreement; the payments involved here are not changes or improvements provided by the Legislature's Agreement for the year 1977, but merely deferrals of payment of improved wages and salaries for the year 1976."

Three days after the award the county addressed a "motion to reopen hearing" to the arbitrator which stated that the parties had "expressly agreed to eliminate all 1977 scheduled payments, including the 1976 deferred payments here in issue. In consideration of such elimination the County negotiated different and, indeed, superior benefits for CSEA members for 1977. Such evidence was not presented * * * because of the unavailability of * * * witnesses * * *. Rather than delay the hearing it was felt that such evidence should only be produced in the event it became essential for the decision of this case. It now appears that such evidence is crucial and, in the interests of justice, it should be placed before the Arbitrator to assist him in his reconsideration of this case. The implications and effects of this matter are too pervasive to be decided except upon a full and complete record."

Despite the petitioners' spirited objection to that "motion", the arbitrator, on April 19, 1978, granted the reopening "in order to make certain that the final award in the matter will not be found defective because of any failure of the arbitrator to afford the parties a full and fair hearing".

Petitioners refused to accept such reopening and moved pursuant to CPLR 7510 to confirm the March 28, 1978 arbitration award. The county cross-moved to vacate the award, to remove Daniel House as the arbitrator, and for a hearing *de novo* before another arbitrator.

The county's cross petition stated that it had been misled into not producing evidence of conversations as to the alleged agreement between it and the CSEA in the 1977 negotiations because "in an off-the-record conversation, the Arbitrator advised that he saw no reason for delay [by continuing the

hearing into the following day] since he did not consider evidence of what transpired at the 1977-1980 negotiations essential for his consideration of the case. The County, accordingly, did not present this evidence at the hearing."

The county then stated that the materiality of such evidence was shown by the arbitrator's opinion in which he stated that " 'the County has offered nothing but its assertion to prove that the provisions * * * for deferral of the 1976 increments and salary adjustment * * * were intended to be eliminated by the 1977 Agreement' ".

The supporting affidavit of the Director of Personnel and Labor Relations for the county stated: "I can offer no explanation * * * for this inconsistency on the part of the arbitrator except perhaps in the passage of time from when the hearing was held on January 10, 1978 until when the Award was issued on March 28, 1978, the Arbitrator may have forgotten his off-the-record remarks to the County representatives * * *. We do not mean to imply that the Arbitrator, Mr. Daniel House, who enjoys a good reputation in his field, had any improper motivation in not permitting the County to adduce this evidence. It would appear that at the time of the hearing, the Arbitrator did not believe such evidence was material to the issues. However, as appears from his Award, this evidence was, in fact, crucial and determinative and, adding insult to injury, the failure of the County to present it was held against the County by the Arbitrator in his decision."

Special Term denied both petitioners' motion to confirm the March 28, 1978 award and the county's cross application to vacate the award and to set the matter down *de novo* before another arbitrator. Instead, it accepted the arbitrator's decision to reopen the hearing so that the county could present its further evidence. Petitioners have appealed from Special Term's judgment; respondents have not cross-appealed.

THE LAW

■ Refusal by an arbitrator to hear pertinent material evidence may constitute misconduct under CPLR 7511 (subd [b], par 1, cl [i]) for which the award should be vacated (*Gervant v New England Fire Ins. Co.*, 306 NY 393; *Matter of Professional Staff Congress/City Univ. of N. Y. v Board of Higher Educ. of City of N. Y.*, 39 NY2d 319; 23 Carmody-Wait 2d, NY Prac, § 141:117).

As stated in Weinstein-Korn-Miller (vol 8, par 7511.15, pp 75-206—75-207): "Courts have frequently used the term 'misconduct' loosely to denote any irregularity * * * whether intentional or unintentional."

■ The arbitration hearing here was conducted without a stenographer. Therefore, on the present record, we have no way of knowing whether the statement attributed to the arbitrator was indeed made. Given the intrinsic informality of arbitration in general, and this arbitration in particular, we cannot rule out the possibility that the arbitrator may have indeed made that statement. It may be argued (assuming the arbitrator did make such statement) that counsel for the county should nevertheless have insisted on presenting such proof, on the analogy of an "offer of proof" at trial. But given the near-finality of an arbitration award, counsel might well consider it tactically inappropriate to incur the possible exacerbation of the arbitrator by insisting upon presenting evidence which the latter had told him was irrelevant and unnecessary to his decision and that it would unnecessarily protract the hearing. Therefore (again assuming, *arguendo,* that the arbitrator made the alleged statement) counsel for the county may not be faulted for following the evidentiary procedure allegedly charted by the arbitrator.

The opinion accompanying the award clearly showed that evidence of the negotiators' alleged stated intents as to the 1977 portions of the increases set forth in the 1976 agreement was a very important factor in the arbitration award. In fact, the arbitrator held it against the county for not offering such evidence. Under such circumstances we believe that if the alleged statement were in fact made, there would indeed be "misconduct", albeit unintentional, sufficient to vacate the award under CPLR 7511 (subd [b], par 1, cl [i]).

There is a distinction between an arbitrator's mistake of fact or law, in general (see *Matter of Schine Enterprises [Real Estate Portfolio of N. Y.],* 26 NY2d 799) and a statement made by the arbitrator which is a direct cause of the parties' not offering competent and material evidence. The latter constitutes an exclusion of evidence which, although more subtle, is just as prejudicially effective as a specific ruling made by an arbitrator that evidence, formally proffered, is to be excluded.

If the arbitrator did not make the alleged statement, the arbitrator's attempt to reopen the arbitration must fail, since in such case he would be *functus officio* and would have no

power to change his award (see *Matter of Mole [Queen Ins. Co. of Amer.],* 14 AD2d 1, 2; *Herbst v Hagenaers,* 137 NY 290, 294), even though, retrospectively, he decided that the unsubmitted evidence should now be heard. Since we cannot, on this record determine whether the alleged statement was made by the arbitrator, we must remit this proceeding to Special Term to hear and report on that issue, and hold this appeal in abeyance in the interim.

LAZER, J. P., RABIN and GULOTTA, JJ., concur.

Appeal from stated portions of a judgment of the Supreme Court, Suffolk County, dated August 1, 1978, held in abeyance and proceeding remitted to Special Term to hear and report in accordance with the opinion herein.