**SCHWEIZER AIRCRAFT CORPORATION, Petitioner–Appellee,**

v.

**LOCAL 1752, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, Respondent–Appellant.**

No. 1394, Docket 93–9233.

United States Court of Appeals, Second Circuit.

Argued March 17, 1994.

Decided July 11, 1994.

John A. Collins, Buffalo, NY (Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria) for respondent-appellant.

Edward B. Hoffman, Elmira, NY (Sayles, Evans, Brayton, Palmer & Tifft) for petitioner-appellee.

Before: MAHONEY, WALKER, and SPROUSE,* Circuit Judges.

SPROUSE, Senior Circuit Judge:

Schweizer Aircraft Corporation ("Schweizer") brought this action in New York State Supreme Court against Local 1752, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("the Union"), to stay arbitration proceedings initiated by the Union on behalf of Evangeline Thrall, a recent retiree who was disputing the calculation of her pension benefits. After removal to the United States District Court for the Western District of New York, David G. Larimer, Judge, both litigants moved for summary judgment. The district court denied the Union's motion, granted Schweizer's motion, and permanently stayed the arbitration on the basis that Schweizer was not an appropriate party in the arbitration proceeding. We reverse.

I

Evangeline Thrall was an employee of Schweizer from June 21, 1944, until December 19, 1969, when she voluntarily terminated her employment. At that time, she had accrued 16 years and 11 months of service under Schweizer's then-existing retirement plan. Thrall was rehired by the company on June 26, 1972, and was covered under its Pension Plan for Union Employees until August 1, 1992, when she voluntarily retired. The Pension Plan under which Thrall retired was supervised by a Pension Committee appointed by Schweizer's Board of Directors. In January 1992 Schweizer notified Thrall that she would be entitled to a monthly pension of $408.58. That sum was calculated by adding $59.12 per month for the first period of employment (June 21, 1944 to December 19, 1969)[1] and $349.46 per month for the second period of employment (June 1972 to August 1, 1992)[2].

On June 20, 1992, Thrall submitted a written request to the Pension Committee, asking that her proposed pension be reviewed and recalculated by adding together the two periods of service and applying to them the $18 multiplier in effect on August 1, 1992, the date of her retirement. The Pension Committee denied her request for recalculation on August 19, 1992. The Union, on behalf of Thrall, initiated collective bargaining agreement (CBA) grievance proceedings, seeking the same relief from the company that Thrall had requested of the Pension Committee and, after failing in that, demanded arbitration on February 2, 1993.

On February 19, 1993, Schweizer brought this action to stay the arbitration proceeding. It contended then, as it does on appeal, that the plan administrators and the Pension Committee are responsible for pension plan administration and are not subject to the grievance and arbitration proceedings provided for in the CBA. It also argued that

---

* The Honorable James M. Sprouse, Senior United States Circuit Judge for the Fourth Circuit, sitting by designation.

1. Calculated by applying the 1969 rate of $3.75 × each year of service between 1944 and 1969.

2. Calculated by applying the 1992 rate of $18 × each year of service from 1972 to 1992.

the Union cannot properly represent a retiree in a dispute over pension benefits and that, in any event, the attempted union intervention was untimely. The district court granted summary judgment to Schweizer on the basis of the company's first contention, that since it is not Schweizer who determines the amount of benefits paid to employees, the Union sued the wrong party. The court concluded that this dispute is not within the scope of the arbitration clause between Schweizer and the Union, but rather, it was a decision by the Pension Committee which should have been challenged by Thrall under the Employee Retirement Insurance Security Act (ERISA), 29 U.S.C. §§ 1001–1461.

We review the district court's grant of summary judgment to Schweizer *de novo*, but in light of the presumption of arbitrability flowing from the national labor policy announced by the Supreme Court in the familiar trilogy of *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). We disagree with each of Schweizer's contentions on appeal and reverse and remand for submission to arbitration. Schweizer's arguments are discussed sequentially.

## II

■ The Pension Plan in effect for Schweizer's union employees was established in 1960. Its subsequent amendments included those added as results of collective bargaining agreements between Schweizer and the Union. This somewhat unusual amendatory method resulted from procedures established by Schweizer granting it sole authority to amend the plan, subject only to any promises it may have made in collective bargaining agreements. That authority is contained in section 8.2 of the Plan established by the company.[3]

The Company acting by its Board of Directors may at any time and from time to time amend this Plan, provided, however, that no such amendment may be inconsistent with any express provision of a collective bargaining agreement covering Union Employees.... Subject to such limitations, the Plan may be amended in any manner deemed desirable, provided, however, that no such amendment shall be discriminatory in favor of Employees who are officers, shareholders or highly compensated as defined in Code Section 401(a)(4) and regulations thereunder.

In the 1991 CBA, Schweizer agreed to the pension provisions generating the dispute we review. Specifically, Article XVII of the 1991 CBA provides, in part:

1. Schweizer Aircraft Corp. established a Pension Plan effective March 1, 1960, providing benefits as set forth in the Plan and the Company pays the complete cost of the plan. The benefit is that described in the document, The Pension Plan for Union Employees of Schweizer Aircraft Corp.

The provisions of this Pension Plan have been heretofore amended and are now further amended effective February 13, 1991 by this Agreement.

2. It is understood and agreed that this Plan shall continue in effect through the term of this Agreement of which it is a part, and that the Company will make the contributions required under ERISA to support the benefits provided in the Plan. *Effective February 13, 1991, the following amendments are made:*

A. Pension benefits for employees retiring between November 1, 1990 and January 31, 1992 will be $17.50 per month for each year of service.

---

3. Significantly, other provisions of the Plan also gave Schweizer's Board of Directors unlimited power over the Plan. Among other things, the Board is empowered to appoint the Pension Committee, to require that Committee members resign for any or no reason, and to fill any vacancies on the Committee. Any director or officer of Schweizer is eligible to serve as a Pension Committee member. The Pension Committee determines, in turn, "all questions arising out of or in connection [with the Plan]" and construes "all terms, provisions, conditions and limitations of the Plan."

B. Pension benefits for employees retiring between February 1, 1992 and January 31, 1993 will be $18.00 per month for each year of service.

C. Pension benefits for employees retiring between February 1, 1993 and January 31, 1994 will be $18.50 per month for each year of service.

(Emphasis added.)

Since Thrall retired in August 1992, it is paragraph 2(B) that is involved in the computation of her pension benefits: "[P]ension benefits for employees retiring between February 1, 1992 and January 31, 1993 will be $18.00 per month for each year of service." Instead of using this language, however, Schweizer amended the Plan on March 7, 1991, to state that a person retiring within the defined time frame would receive a pension "equal to Eighteen Dollars ($18.00) times the number of years or fractions thereof of Credited Service to the date of his termination of employment." The Union urges that the difference between the language which Schweizer had agreed in the CBA to add to the Plan, and the language actually added, is critical to the calculation of Thrall's benefits. It contends that under the language in the CBA, the $18 multiplier would apply to every year of Thrall's service, but that the substituted language actually used by Schweizer might be interpreted to allow the split multiplier rates applied by the Pension Committee.

Schweizer's position apparently is that its unilateral change of language is irrelevant because when read with previous amendments to the Plan, the CBA language cannot be construed as the Union contends. In any event, it urges that resort by the Union to the arbitration provisions of the CBA is unavailable because Thrall's dispute is governed by the Pension Plan, not by the contract negotiated between it and the Union. We, of course, do not resolve the parties' dispute over the Plan's amendment—either its meaning or whether the difference between the CBA version and the Plan version is significant. We are concerned only with the criti-

cal inquiry of whether the Union's arbitration demand implicated the responsibilities of the Plan's administrators or was directed only at the responsibility imposed on Schweizer under the CBA. We are persuaded that it is the latter. The arbitration demand was directed at Schweizer's alleged refusal to comply with the CBA and was focused on the meaning of the CBA language.

In governing disputes over implementation of the agreement, the 1991 CBA directs that disagreements are to be resolved by grievance and arbitration proceedings. Article VI provides:

If a grievance should arise between the Company and an employee or group of employees with respect to rates of pay, wages, hours of employment or other conditions of employment, such grievances shall be taken up at the plant in accordance with the procedure outlined herein.[4]

In contending that the Union cannot invoke the arbitration provisions, Schweizer suggests that Thrall's recourse, if any, is governed by the provisions of ERISA which relate to the authority of the trustees who hold the assets of a benefit plan in trust, 29 U.S.C. § 1103. We disagree. There appears to be little question that Schweizer did not use the exact language promised in the CBA; however, whether this failure is significant is not clear. The effect of that failure depends upon the meaning of the controverted language. The disagreement over the meaning of the language, in turn, represents a quintessential arbitrable dispute that not only affects Thrall but also may affect other members of the Union who will retire in the future. See *United Steelworkers v. American Mfg. Co.*, 363 U.S. at 567–68, 80 S.Ct. at 1346–47 (function of court very limited when parties have agreed to submit questions of contract interpretation to arbitrator).

III

■ We likewise find no merit in Schweizer's contention that the Union is without standing to represent Thrall because she is

4. Article VII provides that, at the request of the Union, unresolved grievances shall be submitted

to arbitration.

presently retired. The grievance on Thrall's behalf was initiated in June 1992, over one month before she retired, and was held in abeyance pending final decision by the Pension Committee. Although we are doubtful that the Union has standing under the CBA to assert the rights of individual retirees in a dispute with a former employer, *see Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971) (individual retirees have remedy for breach of contract under § 301 of Labor Management Relations Act); *International Union, United Auto., Aerospace, and Agric. Implement Workers v. Yard–Man, Inc.*, 716 F.2d 1476, 1484–85 (6th Cir.1983) (union does not have same interest in enforcing retirees' rights under CBA as it does with respect to active employees), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), we need not decide that issue. Because the grievance in this case was filed while Thrall was still an active employee, and its resolution delayed through the mutual actions of the parties, we hold that Schweizer is estopped from now asserting that it has no obligation to arbitrate the dispute.

■ Similarly without merit is Schweizer's concern that the proceeding would not be binding on Thrall because she is not a current member of the collective bargaining unit. Because the Union is Thrall's duly authorized representative, the arbitration, once confirmed, will be *res judicata* as to all claims decided therein. *See Meza v. General Battery Corp.*, 908 F.2d 1262, 1271–72 (5th Cir.1990).

### IV

■ Finally, we find no merit to Schweizer's argument that the Union's counterclaim in the district court is time-barred. An "action to compel arbitration accrues when a party unequivocally refuses a demand to arbitrate." *Associated Brick Mason Contractors v. Harrington*, 820 F.2d 31, 38 (2d Cir. 1987). The parties agree that the time requirements for the judicial action are governed by the six-month limitations period contained in section 10(b) of the NLRA, 29 U.S.C. § 160(b). The Union's only demand for arbitration was made on February 2, 1993. (Its grievance was presented in June 1992, but the company never acted on it.) Schweizer responded to the demand for arbitration by filing, on February 19, 1993, its petition in New York State Supreme Court to stay the arbitration. It appears that this was Schweizer's only unequivocal refusal to arbitrate. Even without considering any possible effect Schweizer's initiating the action to stay arbitration had on the limitations burden borne by the Union or the effect of its raising this timeliness issue for the first time on appeal, we are persuaded that the Union's counterclaim was filed on March 17, 1993—less than a month after Schweizer's refusal to arbitrate—and was obviously timely.

■ Schweizer also complains that the collective bargaining agreement's timeliness requirements were not met. Resolving this assertion, however, involves entirely different considerations.[5] Thrall submitted her request to the Pension Committee on June 20, 1992. The Union, in a separate maneuver, presented an oral grievance [6] "within five days" of Thrall's submission. It claims that this grievance was never resolved. The Union next filed a written grievance on December 23, 1992, after the Pension Committee denied Thrall's request for recalculation of benefits. That grievance suffered the same fate as the first, and the Union demanded arbitration on February 2, 1993. Schweizer contends that the Union satisfied neither the CBA time requirements governing submission of grievances (within five days of the incident) nor the time required for demanding arbitration.

---

5. The CBA provides a three-step grievance procedure. The first step must be initiated within five days of the involved incident. The third and final step of the grievance procedure requires a written answer by the company, and it is deemed to be a final settlement unless the Union files a demand for arbitration to the Federal Mediation and Conciliatory Service within twenty working days after the company has rendered its decision. Article 7, relating exclusively to arbitration, provides that if a grievance has not been satisfactorily settled, it shall "at the request of the Union, be promptly submitted to arbitration."

6. As required by step 1 of the grievance proceedings.

The Union disagrees, and both factual and legal issues arise out of this dispute. It is precisely issues of this genre, however, that the Supreme Court has segregated for arbitral decision. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (question of interpretation of CBA is for arbitrator, not the courts); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964) (procedural questions which grow out of a dispute and bear on its final disposition should be left to an arbitrator). We decide only that the Union timely presented, for judicial determination, its case to compel arbitration. The question of whether the time requirements in the CBA were met, as well as the substantive interpretation of the CBA, must be determined by the arbitrator.

In view of the above, the decision of the district court is reversed and the case remanded with instructions to dismiss Schweizer's petition for stay of arbitration and to grant the Union's demand that arbitration be compelled.