**In the Matter of the Petition to Stay the Arbitration Demanded of HOTEL GREYSTONE CORP., Petitioner,**

**v.**

**NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL–CIO, and Vito Pitta, individually and as President of New York Hotel and Motel Trades, Respondents.**

**No. 95 Civ. 6364 (LAK).**

United States District Court,
S.D. New York.

Nov. 2, 1995.

---

Thomas P. Piekara, Jackson, Lewis, Schnitzler & Krupman, New York City, for Petitioner.

Andrea L. Phillips, Richards & O'Neil, LLP, New York City, for Respondents.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This action involves a petition to stay an arbitration brought pursuant to a collective bargaining agreement. On September 13, 1995, this Court denied petitioner's motion to remand to the state court after determining that jurisdiction was proper under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). At the same time, the Court granted the petitioner's motion for a preliminary stay, pending this resolution of petitioner's motion to stay arbitration permanently and respondent's cross motion to compel arbitration.

### Facts

Petitioner operates the Hotel Greystone (the "Hotel") in Manhattan. Respondents are the New York Hotel and Motel Trades Council, AFL–CIO (the "Union") and Vito Pitta, the Union's president. The Union is the exclusive bargaining representative of the New York City hotel and restaurant industry. Both the Union and Hotel were parties to an industry-wide collective bargaining agreement (the "Agreement") during the relevant time period.

The Agreement contained a broad arbitration clause and established a grievance procedure system whereby disputes would be resolved by a rotating panel of arbitrators known as the Office of the Impartial Chairman. The arbitration clause, contained in Article 26 of the Agreement, stated in relevant part:

"All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts or conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire to be known as the Impartial Chairman, and his decision shall be final and binding upon the parties hereto."

Pursuant to this section of the agreement, Impartial Chairman Ira Drogin arbitrated a dispute, the particulars of which are not relevant to this disposition. In an award dated January 5, Chairman Drogin denied the union's grievance. The union asserts, without contradiction, that it received notice of the award several days later by mail.

By letter dated January 30, 1995, the Union requested the arbitrator to reconsider his

decision. The Hotel opposed the Union's request by letter dated February 9, 1995. Chairman Drogin held a hearing on June 13, 1995 on whether to reconsider the January 5 award. Both parties attended the hearing, presented oral argument, and submitted briefs. On July 19, 1995, Chairman Drogin issued a written opinion granting the Union's request for reconsideration.

Chairman Drogin's opinion set forth the basis on which he granted the union's request for consideration. He stated, "I find and hold that under Section 26 of the collective bargaining agreement I have the power to grant a request for reconsideration and to grant a reopening of an Award I have issued." Chairman Drogin noted an extensive body of case law by the Office of the Impartial Chairman which interpreted the language in the Agreement to permit reconsideration upon a showing that the previous award was "clearly erroneous" or that there existed newly discovered evidence previously unavailable to the requesting party. However, Chairman Drogin explicitly declined to rest his conclusion on this case law or the past practice of the parties, stating instead that it was based solely on interpretation of Article 26. Chairman Drogin did address and emphatically reject the Hotel's argument that reconsideration was barred under the doctrine of *functus officio*:

> "Under this collective bargaining agreement, the arbitrator, after issuance of an Award is not *functus officio* but has the authority, for good cause, to reopen an Award. Since arbitration is, by its nature, consensual and the parties determine the jurisdiction and authority of the arbitrator, the Hotel can not complain about the scope of the authority granted to the arbitrator, particularly his authority to reopen the award."

Chairman Drogin granted the Union's request for reconsideration after concluding that confusion had existed about the issue originally submitted for arbitration and that newly discovered evidence may now exist.

On August 5, 1995, before Chairman Drogin conducted the reconsideration, the Hotel filed a petition for a stay of arbitration in the Supreme Court of the State of New York.

The union then removed the action to this Court on August 14, 1995 and on August 25, 1995 the Union filed a cross-motion to compel arbitration.

### Discussion

In seeking a stay of arbitration, the Hotel launches several attacks on Chairman Drogin's award of reconsideration and respondent's cross-motion to compel arbitration. They boil down to three arguments. The first is that respondent's federal court motion to compel arbitration is time-barred under the six-month statute of limitations established by Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Second, the Hotel has renewed its argument that the Impartial Chairman was barred from granting reconsideration under the doctrine of *functus officio*, meaning that the arbitrator, having rendered an award and thereby discharged his duty, was divested of power. Third, the Hotel asserts that reconsideration is barred because the Union's request was untimely under New York's CPLR § 7509, which states that an arbitrator may modify awards on certain grounds upon written request to the arbitrator "within twenty days after delivery of the award to the applicant." Each of these arguments is deficient for reasons that will be addressed in turn.

*Timeliness Under Section 10(b)*
*of the National Labor Relations Act*

■ A motion to compel arbitration pursuant to a collective bargaining agreement is subject to the six-month statute of limitations established by Section 10(b) of the National Labor Relations Act. *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington*, 820 F.2d 31, 37 (2d Cir.1987). Petitioner argues that its February 9 letter to the arbitrator opposing reconsideration started the clock and that respondent's cross-motion to compel arbitration in late August was, consequently, untimely.

As noted in *Associated Brick Mason*, it is "well established" that a cause of action to compel arbitration does not accrue until a party "unequivocally refuses a demand to arbitrate." 820 F.2d at 38. In this case, the Hotel's letter dated February 9 did not con-

e

stitute an unequivocal refusal to arbitrate. Rather, the Hotel continued to argue about jurisdiction and the merits of the award, participating fully in a hearing before Chairman Drogin on the application for reconsideration. By its action the Hotel continued to engage in the arbitration process. After Chairman Drogin granted the petitioner's request for reconsideration, the petitioner took no further action for approximately two weeks, leaving doubt as to whether it would refuse to abide by the arbitrator's award granting reconsideration. It was not until the Hotel filed a petition to stay arbitration in state court on August 5, 1995 that the Hotel's refusal to arbitrate became unequivocal and the six-month statute of limitations began to run. *Cf. Schweizer Aircraft Corp. v. Local 1752, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 29 F.3d 83, 87 (2d Cir.1994) (treating employer's filing of a petition to stay arbitration in state court as the "only unequivocal refusal to arbitrate" once the union demanded arbitration).

## Doctrine of Functus Officio

 As evidenced by the longstanding industry practice, which is well documented in the body of opinions by the Office of Impartial Chairman, the parties agreed to permit the Impartial Chairman to reconsider awards for good cause.[1] Notwithstanding petitioner's extensive citation to case law applying the doctrine of *functus officio*, this doctrine is "merely a default rule, operative if the parties fail to provide otherwise." *Glass, Molders, Pottery, Plastics and Allied Workers International Union, AFL–CIO, CLC, Local 182(B) v. Excelsior Foundry Co.*, 56 F.3d 844, 847 (7th Cir.1995).[2] In this case, because the parties have agreed otherwise, the doctrine of *functus officio* does not apply as a default rule.

## Timeliness Under New York's CPLR

 Petitioner argues strenuously that the issue should be analyzed under New York's CPLR, relying on *Harry Hoffman Printing, Inc. v. Graphic Communications International Union, Local 261*, 912 F.2d 608 (2d Cir.1990) (applying New York CPLR 7511 to impose a 90–day statute of limitation on applications to the court to vacate an arbitration award in action brought under the LMRA) and *Bevona v. Puretz*, 140 L.R.R.M. 2531, 1992 WL 50936 (S.D.N.Y.1992) (holding that under the LMRA a federal court must look to state law for the appropriate statute of limitations in deciding motions to vacate). Assuming *arguendo* that the CPLR applies,[3] petitioner's argument still fails.

The timeliness argument under CPLR 7509 is unavailing, given that the parties

1. Under the LMRA, courts are authorized to consider the parties' past conduct and bargaining history, as well as industry practice, in interpreting the agreement. *Kodiak Oil Field Haulers, Inc. v. Teamsters Union Local No. 959*, 611 F.2d 1286, 1290–91 (9th Cir.1980) (and cases cited therein); *see Independent Oil Workers Union, Local 117, v. American Oil Co.*, 296 F.Supp. 650, 657 (D.Kan.1967) (in deciding whether a collective bargaining agreement contains a promise to arbitrate a disputed area, the trial court must look to the contract as a whole, including any previous interpretations by the parties).

2. The most recent cases petitioner cites to show the vitality of the doctrine of *functus officio* include *Blue Tee Corp. v. Koehring Co.*, 999 F.2d 633, 637 (2d Cir.1993); *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987); *Lewis v. County of Suffolk*, 70 A.D.2d 107, 419 N.Y.S.2d 680 (2d Dept.1979), *appeal heard*, 77 A.D.2d 599, 430 N.Y.S.2d 10 (2d Dept.1980); *Dahlke v. X–L–O Automotive Accessories, Inc.*, 40 A.D.2d 666, 337 N.Y.S.2d 86 (1st Dept.1972). Contrary to petitioner's position, the Seventh Circuit has concluded that the doctrine *functus officio* "is hang-

ing by its fingernails and whether it can be said to exist in labor arbitration is an uncertainty." *Glass, Molders, Pottery*, 56 F.3d at 846. However, nothing in this opinion depends on the vitality of the doctrine *functus officio* because, even assuming that the doctrine applies in appropriate circumstances, the parties have chosen by agreement not to be subject to it in this case.

3. The cases relied on by petitioner involved questions of timeliness of a party's application to the federal *court* for intervention, not questions of timeliness of an application to the *arbitrator*. This distinction is significant. Historically, under the LMRA, procedural questions fall within the arbitrator's domain, to be determined with reference to the agreement. *See, e.g., Schweizer Aircraft*, 29 F.3d at 88 (deciding that the union made a timely application to the Court to compel arbitration and, at the same time, referring to the arbitrator the question of the union's timeliness in presenting a demand for arbitration to the arbitrator under the terms of the collective bargaining agreement); *Clanebach Inc. v. Las Vegas Local Joint Executive Board of Culinary Workers*

agreed to a system permitting requests for reconsideration on different grounds and under no specific time constraints. The ability of parties to contract around the limitations set forth in CPLR 7509 is implicit in a recent New York Court of Appeals decision which held: "After an arbitrator renders an award, the arbitrator is without power to render a new award or to modify the original award, except as provided for in CPLR 7509. . . . Thus, any award rendered after the original award is null and void *absent an agreement by the parties.*" *Silber v. Silber,* 204 A.D.2d 527, 529, 611 N.Y.S.2d 302, 304–05 (2d Dept. 1994), *leave to appeal dismissed in part, denied in part,* 85 N.Y.2d 856, 624 N.Y.S.2d 370, 648 N.E.2d 790 (1995) (emphasis added).

Even if the parties had not contracted out of the time constraints in CPLR 7509, it appears that the Union's request for reconsideration was timely. CPLR 7509 states "[o]n written application of a party to the arbitration within twenty days after delivery of the award to the applicant, the arbitrator may modify the award." Assuming "delivery" is equivalent to "service," five days are added to the prescribed period, where, as here, the award was delivered by mail. CPLR § 2103(b), subd. 2. Applying that rule to the facts of this case would lead to the conclusion that the Union's request for reconsideration was timely under the CPLR.

### Conclusion

Petitioner's request for a stay of arbitration is denied, and respondent's cross motion to compel arbitration is granted. The Clerk shall enter judgment accordingly.

SO ORDERED.

*and Bartenders,* 388 F.2d 766, 770 (9th Cir.1968) (it is not the function of the court to set forth procedural rules of an arbitration proceeding; rather "[t]hat is the function of the arbitrator, which presumably he will exercise according to the terms of the contract"); *International Ladies' Garment Workers' Union, Local No. 111, v. Dee-Ville Blouse, Inc.,* 486 F.Supp. 1253, 1260 (E.D.Pa.1980) ("procedural questions 'which grow out of the dispute and bear on its final disposition should be left to the arbitrator' ") (citing and interpreting *John Wiley & Sons v. Livingston,* 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1963)). If New York's CPLR does not control, the validity of Chairman Drogin's decision to reconsider the award becomes crystal clear. The question is a procedural matter, and the arbitrator properly found he had the power to reconsider based on his interpretation of the agreement.