**NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL–CIO, Petitioner,**

**v.**

**HOTEL ST. GEORGE, Respondent.**

**No. 97 CIV. 3810(MBM).**

United States District Court, S.D. New York.

Dec. 31, 1997.

David L. Weissman, Richards & O'Neil, New York NY, for Petitioner.

Robert G. Lipp, Franklin & Gringer, Garden City, NY, for Respondent.

## OPINION & ORDER

MUKASEY, District Judge.

New York Hotel and Motel Trades Council, AFL–CIO (the "Union") petitions to con-

firm an arbitration award against Hotel St. George ("St.George"). St. George opposes confirmation and cross-moves to vacate the award on the grounds that: 1) the Union's petition is barred by the statute of limitations; 2) the award itself is barred by res judicata; and 3) the arbitrator was *functus officio* and therefore without authority to issue the award. For the reasons stated below, the arbitration award is confirmed, and St. George's motion to vacate is denied.

## I.

The following facts, taken from the parties' submissions, are relevant to the petition to confirm: the Union is an unincorporated labor organization composed of approximately 25,000 members, each of whom is employed in the hotel industry in New York City. (Petition ¶ 1) St. George is a hotel corporation organized under the laws of the State of New York with its principal place of business in Brooklyn, New York. (*Id.* ¶ 2)

The Union and St. George are parties to a collective-bargaining agreement (the "Agreement") which contains provisions regulating wages, hours, and working conditions for union employees. (*Id.* ¶ 3) The Agreement also contains an arbitration clause which provides, in relevant part, as follows:

SECTION 26: COMPLAINTS, GRIEVANCES & ARBITRATION

All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this agreement, or any acts conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire to be known as the Impartial Chairman, and his decision shall be final and binding upon the parties hereto
. . .
The decision rendered by the Impartial Chairman shall have the effect of a judgment entered upon an award made, as provided by the Arbitration Laws of the State of New York, entitling the entry of a judgment in a court of competent jurisdiction against the defaulting party who fails to carry out or abide by such decision.

(*Id.* ¶ 5) The arbitration clause provides also that either party may proceed *ex parte* before the Impartial Chairman if the other fails to appear after receiving proper notice of a hearing date. (*Id.* ¶¶ 6–7)

In February 1993, the Union filed a complaint with the Office of the Impartial Chairman alleging that St. George was in violation of certain provisions of the Agreement. (Gringer Aff. Ex. A) On February 22, 1993, the Office of the Impartial Chairman sent a letter to St. George indicating that a hearing had been scheduled to examine the following allegations against the hotel: "Unjust layoff of all front office clerks; Management doing work of laid off employees; Failure to notify union of layoff; Failure to put employees on check-off." (*Id.*)

On May 5, 1993, a hearing was held on the Union's complaint before Impartial Chairman Philip Ross (the "Arbitrator"). (Gringer Aff. ¶ 5) Both parties appeared at the May 1993 hearing and each was represented by counsel. At the hearing, the Union presented evidence that St. George had been permitting non-union workers to perform front desk duties at the hotel ever since three union employees—Helen Chan, Audrey Day, and Anthony Moore—were laid off by the hotel in February 1993. (*Id.* Ex. C. at 3) On June 28, 1993, the Arbitrator issued a written opinion and award (the "1993 Award") sustaining the Union's complaint "in its entirety," and ordering St. George to reinstate the three employees and to give them back pay as of the date of the award. (*Id.* at 4)

Although St. George failed to reinstate the employees or to pay them back wages, the Union never petitioned to have the 1993 Award confirmed. (Ginger Aff. ¶ 7) Instead, the Union attempted to enforce the 1993 Award by filing a second complaint with the Office of the Impartial Chairman in November 1994. (*Id.*) On November 16, 1994, the Office of the Impartial Chairman sent a letter to St. George indicating that a hearing had been scheduled for January 24, 1995 concerning: "Failure of hotel to comply with Arbitrator's Decision #93–88 [the 1993 Award]; Failure to reinstate Anthony Moore, Audry [sic] Day and Helen Chan, delegate;

Failure to pay back wages and benefits; Failure to pay the contractual wages and benefits to all three employees prior to January 1, 1994 to time of layoff." (*Id.* Ex. D)

On January 24, 1995, St. George appeared at the hearing and objected to the proceedings on the ground that the Office of the Impartial Chairman lacked jurisdiction to enforce the 1993 Award. (*Id.* Ex. E at 4) St. George argued also that because the Union did not petition to confirm the 1993 Award within one year, the award was unenforceable. (*Id.* at 6) In response, the Union argued that the Impartial Chairman had discretion to enforce the 1993 Award and requested an opportunity to brief the issue before a final decision was reached in the matter.. (*Id.* at 7–8) The Arbitrator[1] granted the Union's request to submit papers and adjourned the hearing without setting a return date. (*Id.* at 9)

Precisely what happened to the Union's second complaint against St. George seeking enforcement of the 1993 Award is not clear from the record. There is no evidence that any further hearings were held in the matter; nor is there evidence that the Union withdrew its complaint or that it was dismissed by the Arbitrator.

However, it is clear from the record that on or about April 25, 1995, the Union filed a third complaint with the Office of the Impartial Chairman. (Petition ¶ 4) That day, the Office of the Impartial Chairman notified St. George by letter that a hearing on the complaint had been scheduled for June 6, 1995. (Gringer Aff. Ex. I) The letter stated that the Union's complaint contained the following allegations against St. George: "Failure/refusal to abide by CBA [the Agreement]. Non-union employees doing bargaining unit work while union employees are on layoff (All front desk agents)." (*Id.*) On June 6, 1995, St. George failed to appear at the hearing. (Petition ¶ 6)

In a second notice, dated June 27, 1995, St. George was informed that the hearing—now marked "PEREMPTORILY AGAINST THE EMPLOYER"—had been rescheduled

for August 2, 1995. (*Id.*) On July 11, 1995, the Union amended the complaint against St. George to include a request for liquidated damages. (*Id.*) A third notice—also marked "PEREMPTORY" and reflecting both the Union's request for liquidated damages and the August 2, 1995 hearing date—was sent to St. George on July 14, 1995. (*Id.*) Nevertheless, St. George once again failed to appear on the scheduled hearing date. (*Id.*)

At the hearing, the Arbitrator asked the Union if it wished to proceed *ex parte* against St. George as authorized by Article 26 of the Agreement. (*Id.*) The Union elected instead to have the hearing rescheduled for December 5, 1995 and requested that a final notice of hearing be sent to St. George via registered mail. (*Id.*) Notice of the new hearing date was sent to St. George and a return receipt for the letter was signed on November 9, 1995 by an authorized agent of St. George. (*Id.* Ex. B at 1) On December 5, 1995, St. George failed to appear for a third time. (*Id.*)

On that day, the Arbitrator granted the Union's motion to proceed *ex parte*. (*Id.*) At the hearing, the Union presented evidence that non-union employees were still performing front desk agent duties at the hotel while the same three front desk agents were on layoff. (*Id.*) The Union also provided the Arbitrator with an accounting of back wages owing to each of the three employees for the period beginning June 28, 1993—the date the 1993 Award was issued—through December 5, 1995. (Roth Aff. Ex. B) On March 6, 1997, the Arbitrator issued a written opinion and award (the "1997 Award") ordering St. George to pay damages to Audrey Day, Helen Chan, and Anthony Moore in the amounts of $12,500, $12,500, and $7,500, respectively. (Petition Ex. B at 1) On April 30, 1997, the Union filed a petition to confirm the 1997 Award in Supreme Court, New York County. St. George removed the action to this court on May 22, 1997.

## II.

Confirmation of an arbitration award is a "summary proceeding that merely makes

---

1. Philip Ross served as the Impartial Chairman for each of the arbitration proceedings between the Union and St. George.

what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir.1984). The party moving to vacate an arbitration award bears the burden of proof, *see Roche v. Local 32B–32J Serv. Employees Int'l Union,* 755 F.Supp. 622, 624 (S.D.N.Y.1991), and the showing required to defeat confirmation is high. *See Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir.1987). The reason for this limited judicial review is to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993). The federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). Moreover, a labor arbitration award is enforceable by a federal court as long as "it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

### A. The Statute of Limitations Does Not Bar Confirmation of the 1997 Award

■ St. George argues first that the Union's petition to confirm the 1997 Award is barred by the statute of limitations. (Def. Mem. at 1) St. George claims that the 1997 Award is "in reality, a duplicate of a prior award issued by the same arbitrator in 1993." (*Id.*) St. George contends that because the Union did not petition to confirm the 1993 Award within one year after it was issued, the statute of limitations bars the Union's petition in this case. (*Id.*) St. George's argument fails because it does not address the timeliness of the Union's petition to confirm the 1997 Award, but only the power of the arbitrator to make that award.

The 1997 Award arises from the violation of a contract between an employer and a labor organization; therefore § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1994), governs the Union's petition to confirm. *See General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.,* 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963) (per curiam); *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261,* 912 F.2d 608, 612 (2d Cir.1990). "[T]he timeliness of a [§] 301 suit ... is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *International Union, United Auto., Aerospace & Agric. Implement Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966). Similarly, a petition to confirm or vacate an arbitration award brought under the LMRA is timely if it is filed within the appropriate state statute of limitations. *See Eichleay Corp. v. International Ass'n of Iron Workers,* 944 F.2d 1047, 1061 (3d Cir.1991) (petition to confirm); *Harry Hoffman,* 912 F.2d at 612 (petition to vacate); *Posadas de Puerto Rico Assoc. v. Asociacion de Empleados,* 873 F.2d 479 (1st Cir.1989) (same).

In this case, the appropriate state statute of limitations is § 7510 of the New York Civil Practice Law and Rules. *See Local 153, Office & Professional Employees Int'l Union v. Depository Trust Co.,* No. 93 Civ. 4433, 1989 WL 516560, at *2–3 (S.D.N.Y. Aug.28, 1995) (applying C.P.L.R. §§ 7510, 7511 to petition to modify or confirm arbitration award governed by LMRA). C.P.L.R. § 7510 provides as follows: "The court shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified upon a ground specified in section 7511." Section 7510 is a mandatory provision which bars a petition to confirm an arbitration award filed more than one year after the award was delivered to the petitioner. *See Elliot v. Green Bus Lines, Inc.,* 58 N.Y.2d 76, 78, 459 N.Y.S.2d 419, 419, 445 N.E.2d 1098, 1098 (1983).

Here, it is undisputed that the 1997 Award was not delivered to petitioner until March 6, 1997. (Petition Ex. B. at 2). It is also undisputed that the Union filed its petition to confirm the 1997 Award on April 30, 1997. Because the petition to confirm was filed within one year after the 1997 Award was

delivered to the Union, the Union's petition was timely under C.P.L.R. § 7510.

St. George's argument—which asks the court in essence to evaluate the timeliness of the Union's petition as if it were a petition to confirm the 1993 Award—is not a statute of limitations argument at all. Rather, St. George's claim that the 1997 Award is merely "duplicat[ive]" of the 1993 Award goes to whether the Arbitrator was *functus officio* when he issued the 1997 Award. As a result, I will address this claim in the connection with St. George's motion to vacate, *see* discussion *infra* at pp. 25–31.

**B.** *Res Judicata Does Not Bar Confirmation of the 1997 Award*

■ St. George argues next that the Union's petition to confirm the 1997 Award is barred by res judicata. (Def. Reply. at 3) St. George asserts that the 1997 Award is based on the same underlying claim as the 1993 Award—*i.e.* non-union workers performing front desk duties while certain union employees were on layoff. (*Id.*) For its part, the Union argues that the two awards are not the same because the 1997 Award covers a later period of time than the 1993 Award. (Roth Aff. ¶ 8) In response, St. George contends that if the time periods are indeed different, then the Union improperly split its claims against the hotel and the 1997 Award should be disallowed. (Def. Reply at 3) St. George's arguments are foreclosed because it did not raise these issues before the Arbitrator.

" '[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate a particular grievance—is undeniably an issue for judicial determination.' " *Transit Mix Concrete Corp. v. Local Union No. 282, Int'l Brotherhood of Teamsters,* 809 F.2d 963, 967 (2d Cir.1987) (*quoting AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). However, " 'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.' " *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418–19. That

is because " '[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.' " *Connecticut Light & Power Co. v. Local 420, Int'l Brotherhood of Electrical Workers,* 718 F.2d 14, 19–20 (2d Cir.1983) (*quoting United Steelworkers,* 363 U.S. at 596, 80 S.Ct. at 1360).

Here, the Agreement between St. George and the Union contains a broad arbitration clause. That clause requires that "[a]ll complaints, disputes or grievances ... involving questions or interpretation or application of any clause of this agreement, or any acts conduct or relations between the parties, directly or indirectly" be arbitrated. (Petition ¶ 5) The Agreement provides also that the Arbitrator's decision "shall be final and binding upon the parties ... and shall have the effect of a judgment entered upon an award made, as provided by the Arbitration Laws of the State of New York ...." (*Id.*) Based on the express language of the Agreement, the issue of whether the 1997 Award was barred by res judicata—a dispute which arises under the Agreement, concerns the finality of a prior decision of the Impartial Chairman, and goes directly to the merits of the 1997 Award—was arbitrable, and St. George should have made this argument before the Arbitrator.

Indeed, if St. George had moved to stay arbitration before the 1997 Award was issued based on res judicata, I would have denied the motion and left the issue for the Arbitrator to determine. *See National Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.,* 88 F.3d 129, 133 (2d Cir.1996) (issue of res judicata arbitrable under FAA); *Accord Transit Mix,* 809 F.2d at 969 (same result under LMRA). The Second Circuit's decision in *Transit Mix* is directly on point. In that case, a collective-bargaining agreement between Transit Mix and the union contained a broad arbitration clause which made "[a]ny and all complaints, grievances, controversies or disputes ... in connection with or in relation to this Agreement" subject to arbitration. 809 F.2d at 968. The arbitration clause provided also that any awards issued "shall be final, conclusive, and binding" on the parties. *Id.* at 969. In affirming the

denial of Transit Mix's motion to stay arbitration based on res judicata, the Court held that:

[Q]uestions as to the applicability of the finality clause—in the sense of whether the Lippman award adjudicated the issues raised in the present dispute—or as to its effect—in the sense of the res judicata effect of the Lippman award—are assigned, at least in the first instance, to the ... arbitrator.

(*Id.*) *See also Lito Shipping Corp. v. Pioneer Petroleum Products, Inc.*, No. 93 Civ. 778, 1997 WL 160321, at *2 (S.D.N.Y. Apr.3, 1997) (same result under FAA); *World Fin. Properties, L.P. v. Local 32B–32J, Service Employees Int'l Union*, No. 96 Civ. 9800, 1997 WL 33594, at *3 (S.D.N.Y. Jan.29, 1997) (same result under LMRA).

As noted, St. George did not raise the issue of res judicata—or any other issue for that matter—in the arbitration which produced the 1997 Award because St. George did not appear at any of the scheduled hearings on the Union's complaint. It is clear from the record that St. George declined to appear at those hearings deliberately for two reasons. First, St. George apparently believed that the Arbitrator lacked jurisdiction to enforce the 1993 Award or the authority to issue a new award based on the same type of conduct as the 1993 Award. St. George stated as much on the record at the January 24, 1995 hearing on the Union's complaint seeking enforcement of the 1993 Award. (Gringer Aff. ¶ 8; Ex. E at 4–8) The validity of St. George's assumptions about the Arbitrator's lack of authority will be addressed below. *See* discussion of *functus officio* doctrine, *infra* at pp. 25–31.

Second, St. George refused to appear because it thought that its "participat[ion] in any subsequent arbitral proceedings related to the 1993 Award" would have waived its right to object to the Arbitrator's authority to reconsider or modify the 1993 Award. (Def. Mem. at 6) This conclusion—which appears to have been predicated on an erroneous reading of Judge Kaplan's holding in *Hotel Greystone Corp. v. New York Hotel and Motel Trades Council*, 902 F.Supp. 482, 485 (S.D.N.Y.1995)—is simply wrong. In

*Hotel Greystone*, Judge Kaplan held that the hotel could not object to the arbitrator's reconsideration of a prior award based upon "longstanding industry practice ... [which demonstrated that] the parties agreed to permit the Impartial Chairman to reconsider awards for good cause." 902 F.Supp. at 485. Because Judge Kaplan found that the hotel and the union had consented in the past to reconsideration of arbitration awards for good cause, the hotel's participation—or lack thereof—at subsequent proceedings in that matter was not a prerequisite to finding that the hotel had consented to a reconsideration of the award in that case. *Id.*

In other words, *Hotel Greystone* does not stand for the broad proposition that mere participation by a party in subsequent arbitration proceedings automatically waives that party's right to object to the arbitrator's authority either to reconsider a prior award or to issue a new one. Thus, had St. George participated in the arbitration proceedings that produced the 1997 Award, it would not necessarily have been barred from challenging the Arbitrator's authority to issue the award. *Cf. Hotel Greystone*, 902 F.Supp. at 485.

■ However, when St. George failed to appear at the arbitration, it did waive the right to assert in this proceeding any merit-based defenses it may have had to the 1997 Award, including its claim that the 1997 Award is barred by the res judicata effect of the 1993 Award. St. George cites no cases— and I am aware of none—standing for the proposition that a party may successfully oppose confirmation on such grounds when the issue of res judicata was not raised before the arbitrator. In fact, recent case law from within this Circuit suggests the opposite conclusion.

■ For example, in *Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 32 (2d Cir.1997), the Court of Appeals refused to consider Wackenhut's argument—raised for the first time before the district court on a petition to vacate the arbitration award—that the arbitrator erred by failing to follow arbitral precedent in reaching his decision. The Court held that "[t]he role of stare decisis in

arbitration is not raised by this case, however, because, as the district court found, one of the two awards Wackenhut claims is in conflict with the present award was not even called to the attention of the arbitrator...." *Id.* Although the *Wackenhut* Court framed the issue as one of stare decisis, the same principle bars the argument that St. George advances here based upon the res judicata effect of a prior arbitration award.[2] *See Connecticut Light & Power Co. v. Local 420, Int'l Brotherhood of Electrical Workers*, 718 F.2d 14, 20 (2d Cir.1983) ("Principles of stare decisis and res judicata do not have the same doctrinal force in arbitration proceedings as they do in judicial proceedings; and, while it is the usual practice of arbitrators to find prior awards final and binding, subsequent arbitrators may set aside or modify a previous award in certain circumstances.") (citations omitted); *North River Ins. Co. v. Allstate Ins. Co.*, 866 F.Supp. 123, 128 (S.D.N.Y. 1994) (an "arbitrator faced with a case with issues resolved in a prior arbitration has discretion as to whether to follow a previous award.") Because arbitrators possess such discretion, the res judicata effect, if any, to be accorded a prior arbitration award is a matter to be decided by the arbitrator, and not the district court on a petition to confirm.

This same conclusion was reached by Judge Haight in *Enterprise Ass'n Metal Trades Branch Local Union 638, v. Empire Mechanical, Inc.*, No. 91 Civ. 5014, 1992 WL 84689, at *2 (S.D.N.Y. Apr.9, 1992). In that case, Empire opposed the union's petition to confirm an arbitration award arguing, *inter alia*, that prior arbitration awards between the parties fully adjudicated the union's claims that were at issue in the subsequent arbitration. *Id.* In granting the union's petition to confirm, Judge Haight held that Empire was prohibited from raising the issue of res judicata on the grounds that any affirmative defenses affecting the merits of the union's complaint—including res judicata— were "for the arbitrators at the hearing, and [] not for the Court on a petition to confirm the award." *Id.* Judge Haight analogized the case to one in which an employer pleads the

res judicata effect of a prior arbitration award in opposition to a motion to compel arbitration; an argument which the Second Circuit has repeatedly refused to consider in favor of leaving that determination to the arbitrators. *See e.g. Transit Mix*, 809 F.2d at 970.

■ In addition to the arguments set forth in Judge Haight's well-reasoned opinion, other arguments support the conclusion that a party may not oppose confirmation of an arbitration award on res judicata grounds where that argument was not presented to the arbitrator. First, as noted, permitting a party to litigate the res judicata effect of a prior arbitration award before a court—rather than before an arbitrator—is inconsistent with the proposition that arbitrators have broad discretion to determine the precedential or preclusive effect, if any, to be accorded an issue or claim decided in a prior arbitration. *See Connecticut Light & Power*, 718 F.2d at 20; *Transit Mix*, 809 F.2d at 969; *see generally* Timothy J. Heinsz, *Grieve It Again: Of Stare Decisis, Res Judicata and Collateral Estoppel in Labor Arbitration*, 38 B.C. L.Rev. 275, 292–300 (1997).

■ Second, the policy concerns which underlie the doctrine of res judicata apply far less forcefully where a party seeks to oppose confirmation of an existing arbitration award than where that party opposes being compelled to arbitrate a particular dispute in the first place. Because a court may not refuse to compel a party to submit to arbitration based on that party's claim that the res judicata effect of a prior arbitration award bars the proceedings, *see Transit Mix*, 809 F.2d at 970, it follows *a fortiori* that a court should not refuse to confirm an arbitration award on the same grounds.

"[R]es judicata or claim preclusion 'prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided.'" *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992), *cert. denied*, 506 U.S. 1053,

---

**2.** I note also that in labor arbitrations, the doctrines of stare decisis and res judicata tend to converge because the same parties—the union

and the employer—are involved in every arbitration.

113 S.Ct. 977, 122 L.Ed.2d 131 (1993) (*quoting Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir.1992)). A central policy concern underlying res judicata is that it protects parties from "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Milltex Indus. Corp. v. Jacquard Lace Co.*, 922 F.2d 164, 168 (2d Cir.1991) (*quoting Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979)).

To the extent that these and other policies favor permitting a party to assert res judicata based on a prior arbitration award, such concerns are most compelling when articulated in opposition to a motion to compel arbitration. At that point, were a court permitted to conclude that res judicata would indeed bar the arbitration, the expense and vexatiousness of a second arbitration could be avoided, judicial and arbitral resources conserved, and the possibility of inconsistent decisions averted. *See Milltex Indus.*, 922 F.2d at 168. Nevertheless, a court is not permitted—even at that stage of the dispute—to substitute its judgment on such issues for that of the arbitrator. *See Transit Mix*, 809 F.2d at 969.

By contrast, permitting a party to assert res judicata for the first time in opposition to a petition to confirm an arbitration award would yield few, if any, potential benefits. To begin with, neither party could be spared the expense of a subsequent arbitration proceeding because it has already taken place. Nor would such a practice conserve judicial resources. Rather, permitting a party to raise this issue on a petition to confirm would waste considerable judicial time and effort because the court would have to scrutinize the merits of the second arbitration to determine if it dealt with "any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided." *Woods*, 972 F.2d at 38. Further, permitting a party to assert res judicata would increase the risk of producing inconsistent decisions because a court might be tempted to conclude that the arbitrator should have taken the res judicata

effect of a prior arbitration award into account in reaching his decision.

■ Third, permitting a party to oppose confirmation of an award based on a claim that it did not raise before the arbitrator would also offend the general principle that a party "cannot remain silent, raising no objection during the course of the arbitration proceedings, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first." *York Research Corp. v. Landgarten*, 927 F.2d 119, 122 (2d Cir.1991) (*quoting Cook Indus. v. C. Itoh & Co.*, 449 F.2d 106 (2d Cir.1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972)). Here, despite full knowledge of the facts and the allegations upon which the 1993 Award was based, St. George never raised the issue of res judicata at the time the 1997 Award was issued. St. George's failure to do so is particularly striking considering that on the one occasion when the hotel did in fact appear before the Arbitrator after the 1993 Award was issued—*i.e.* the January 25, 1995 hearing on the Union's complaint seeking enforcement of the 1993 Award—St. George raised several other objections to the Union's complaint including the statute of limitations and the Arbitrator's lack of jurisdiction to enforce his own award. (Gringer Aff. Ex. E at 4)

■ Although my finding that St. George waived its right to assert res judicata by not raising it before the Arbitrator is not strictly required by cases such as *Young* and *Cook Indus.*—both of which are primarily concerned with a party's failure to object to the arbitration itself on the grounds of partiality or bias—the fact remains that St. George was well aware of the facts supporting its claim of res judicata over two years before the 1997 Award was issued. As a result, St. George should not be permitted to sandbag both the Arbitrator and the Union by withholding any merit-based objections it may have had to the 1997 Award until the Union petitioned the district court for confirmation. For all of these reasons, St. George is prohibited from opposing confirmation of the 1997 Award based on the ground that the

arbitrator should have given res judicata effect to the 1993 Award.[3]

■ However, even if St. George were permitted to assert res judicata for the first time in this court, the scope of review of the Arbitrator's decision in this regard would be extremely limited. As the Second Circuit recently reaffirmed in *Saint Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir.1997), the "principal question for the reviewing court is whether the arbitrator's award 'draws its essence from the collective bargaining agreement' since the arbitrator is not free merely to 'dispense his own brand of industrial justice.'" (*citing In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir.1988) and *quoting Enterprise Wheel*, 363 U.S. at 593, 80 S.Ct. at 1358). In order for an arbitration award to draw its essence from the agreement, the arbitrator "need only explicate his reasoning under the contract 'in terms that offer even a barely colorable justification of the outcome reached.'" *In re Marine Pollution*, 857 F.2d at 94 (citing *In Matter of Andros Compania Maritima, S.A. & Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir.1978)).

■ Similarly, "[c]ourts reviewing inconsistent awards have also held that neither award will be set aside where both draw their essence from the collective agreement." *Connecticut Light & Power*, 718 F.2d at 20 (citations omitted). In other words, the failure of an arbitrator to accord res judicata effect to a prior arbitration award is not a sufficient ground for refusing to confirm a second award as long as the second award itself draws its essence from the parties' agreement. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 765, 103 S.Ct. 2177, 2182–83, 76 L.Ed.2d 298 (1983); *Hotel Ass'n of Washington, D.C. v. Hotel & Restaurant Employees Union, Local 25*, 963 F.2d 388 (D.C.Cir.1992); *Connecticut Light & Power*, 718 F.2d at 20.

■ Here, the Arbitrator's written opinion, in which he explains his reasons for issuing the 1997 Award, provides, in pertinent part, as follows:

> Evidence was submitted by the Union concerning non-union employees performing front desk agent duties, which is bargaining unit work, while the following three front desk agents were on layoff: Audrey Day, Helen Chan and Anthony Moore. Based upon the evidence submitted to me and taking into account the obligation of the grievants to mitigate their damages, I find the following employees are owed the following amounts:
>
> | Audrey Day: | $12,500.00 |
> | Helen Chan: | $12,500.00 |
> | Anthony Moore: | $ 7,500.00 |

(Petition Ex. B at 1) In addition to the evidence described above, the Union also provided the Arbitrator with an accounting of back wages owing to each of the three employees for the period of June 28, 1993 through December 5, 1995. (Roth Aff. Ex. B) When taken together, the Arbitrator's written opinion and the Union's submission relating to back wages provide far more than a "colorable justification for the outcome reached" in the 1997 Award, *Andros*, 579 F.2d at 704, and therefore demonstrate that the 1997 Award draws its essence from the Agreement.

Simply put, the justification for the 1997 Award is that it relates to a different time period than the 1993 Award. As noted, the 1993 Award was based on the Arbitrator's finding that St. George had been permitting non-union workers to perform front desk duties at the hotel since the union employees were laid off in February 1993. (Gringer Aff. Ex. C at 1–2) As a result, the Arbitrator ordered St. George to reinstate the three employees and to give them back pay as of June 28, 1993—the date of the 1993 Award. (*Id.* at 4). However, St. George never reinstated Chan, Day, or Moore, or paid them any back wages. (Gringer Aff. ¶ 8)

---

**3.** Of course, the Arbitrator was aware of the 1993 Award because he himself had issued it. For this reason, it might also be appropriate to treat the 1997 Award as embodying an implicit rejection of the res judicata argument that St. George advances here. In any event, whether the issue was actually before the Arbitrator or not, his alleged failure to follow arbitral precedent in this case is subject to extremely limited review by the court. *See* discussion *infra*, at pp. 20–22.

■ By contrast, the 1997 Award appears predicated on violations of the Agreement occurring after June 28, 1993, the date the 1993 Award was issued. The Union's submission detailing the amount of back wages owing to the three employees for the period from June 28, 1993 to December 5, 1995 supports this conclusion. Given that St. George never reinstated Chan, Day, or Moore, and considering that the hotel continued to operate after the 1993 Award was issued, the Arbitrator apparently found that St. George continued to violate the Agreement during this period by having non-union employees perform front desk agent duties. That the 1997 Award involves "essentially the same course of wrongful conduct" as the 1993 Award does not necessarily mean that the same claim was at issue for res judicata purposes. *See Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955); *Prime Management Co. v. Steinegger,* 904 F.2d 811, 816 (2d Cir.1990).

Moreover, although St. George is undoubtedly correct that the 1997 Award does not say explicitly which time period it covers, the rest of the Arbitrator's written opinion, as well as the Union's submission regarding back wages, are sufficient to rebut St. George's contention that the 1997 Award can be based only on the same claim that produced the 1993 Award. However, even if St. George's proposed view of the facts of this dispute were a plausible one, or even a more persuasive one than that offered by the Arbitrator in the 1997 Award, it would still have to be rejected because of the deference that federal courts must accord to the results reached by arbitrators in labor cases. As noted, "confirmation of [an][] award cannot be prevented by litigants who merely argue, however persuasively, for a different result." *Andros,* 579 F.2d at 704.

Nor is this case similar to the unusual situation confronted by the Second Circuit in *Connecticut Light & Power.* In that case, the Court vacated the first of two arbitration awards because the decision of the first arbitrator—which included an order of prospective relief in favor of the union—simply could not be reconciled with the result reached by

a second arbitrator in a case involving the same underlying factual dispute. 718 F.2d at 20–21. Citing the irreconcilable inconsistency of the two awards, as well as the compelling need to settle the underlying dispute between the parties, the Court vacated the first award and confirmed the second on the ground that the second "most nearly conform[ed] to the intent of the parties." *Id.* at 21.

However, the Court noted specifically that it had been faced with "an unusual situation" in *Connecticut Light & Power* that forced a choice between two arbitration awards. *Id.* at 20. The Court cautioned also that where such circumstances are not present, the mere fact that one arbitration award is "inconsist[] with another award is not enough by itself to justify vacating an award." *Id.*

In this case, there is no need to revisit the difficult issues that confronted the Court of Appeals in *Connecticut Light & Power* because the arbitration awards at issue here are not inconsistent. As noted, the 1993 and 1997 Awards relate to different time periods, the earlier award to the period from February 1993 to June 28, 1993 and the later from June 28, 1993 to December 5, 1995. Nor do the two awards order inconsistent relief. The 1993 Award ordered St. George to reinstate Helen Chan, Audrey Day, and Anthony Moore, and to give them back pay as of June 28, 1993, the date of the award. (Gringer Aff. Ex. C at 4) By contrast, the 1997 Award does not order St. George to reinstate either Chan, Day, or Moore, or to pay them any back wages. (Petition Ex. B at 1) Instead, the 1997 Award orders St. George to make what appear to be liquidated damage payments to Chan, Day, and Moore in the amount of $12,500, $12,500, and $7,500, respectively. (*Id.*)

To the extent that 1993 and 1997 Awards are inconsistent at all, the record in this case fails to demonstrate that it is necessary for this court to reconcile them. In short, this case bears no resemblance to the "unusual situation" that confronted the Court of Appeals in *Connecticut Light & Power* where the Court was forced to vacate one award and confirm the other in order to settle the underlying dispute between the parties. Ac-

cordingly, St. George's arguments based on the Arbitrator's failure to give res judicata effect to the 1993 Award must be rejected.

## III.

St. George moves also to vacate the 1997 Award based on the doctrine of *functus officio*. (Def. Mem. at 1) St. George argues that after issuing the 1993 Award, the Arbitrator became *functus officio* and lacked the power to reconsider or amend that decision. (*Id.* at 2) Based—once again—on its assumption that the 1997 Award is merely "duplicat[ive]" of the 1993 Award, St. George contends that the 1997 Award must be vacated because the Arbitrator had no authority to issue it. (*Id.*) St. George's argument fails because the doctrine of *functus officio* does not apply here.

"The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission. Such an agreement or submission serves not only to define, but to circumscribe, the authority of arbitrators." *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987) (*citing* 6 C.J.S. Arbitration § 69, at 280–81 (1975)). "Once arbitrators have finally decided the submitted issues, they are, in common-law parlance, 'functus officio,' meaning that their authority over those questions is ended." *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*, 931 F.2d 191, 195 (2d Cir.1991). "The rational underlying this rule is to prevent re-examination of an issue by a nonjudicial officer potentially subject to outside communication and unilateral influence." *A/S Siljestad v. Hideca Trading, Inc.*, 541 F.Supp. 58, 61 (S.D.N.Y.1981), *aff'd*, 678 F.2d 391, 392 (2d Cir.1982) (per curiam). However, the doctrine of *functus officio* does not bar submission of any claim or issue to a second arbitration if that claim or issue has not been decided previously by the arbitrators. *See Trade & Transport*, 931 F.2d at 195.

As Judge Posner recently noted, the doctrine of *functus officio* has become "riddled with exceptions" and may not "even be said to exist in labor arbitrations." *Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union v. Excelsior Foundry Co.*, 56 F.3d 844, 846 (7th Cir.1995). Judge Posner observed also that the doctrine has its roots "in the bad old days when judges were hostile to arbitration and ingenious in hamstringing it." *Id.* However, whether the doctrine of *functus officio* continues to have any vitality, in the context of labor arbitrations or otherwise, is a question that I need not address here because the 1997 Award is neither a reconsideration of, nor an amendment to, the 1993 Award. Moreover, the 1997 Award is based on a claim that could not have been adjudicated by the first arbitration.

As noted, the Arbitrator's authority to issue the 1997 Award is based on the parties' Agreement in which the Union and St. George agreed to submit "[a]ll complaints, disputes or grievances arising between the parties hereto involving ... any acts conduct or relations between the parties" to arbitration. (Petition ¶ 5) The Agreement provides also that either party has the right to proceed *ex parte* before the Arbitrator if the other fails to appear at a hearing. (*Id.* Ex. B at 1) Given the breadth of the arbitration clause, the provision authorizing *ex parte* proceedings,[4] and the fact that the 1997 Award adjudicated a different claim from the one that was at issue in the prior award, the Arbitrator had the authority to issue the 1997 Award.

The doctrine of *functus officio* does not apply here because the 1997 Award is neither a reconsideration of, nor an amendment to, the 1993 Award.[5] First of all, the 1997

---

4. St. George does not challenge the Arbitrator's authority to issue the 1997 Award *ex parte* or the sufficiency of the notice it received of the December 5, 1995 hearing date. A properly designated arbitrator may proceed in the absence of a party who refuses to participate. *See Corallo v. Merrick Cent. Carburetor, Inc.*, 733 F.2d 248, 250 n. 1 (2d Cir.1984); *O'Brien v. Anchor Processing Co.*,

No. 90 Civ. 7519, 1991 WL 120458, at *5 (S.D.N.Y. June 26, 1991).

5. I note here also that even if the 1997 Award were a reconsideration of the prior award, St. George would be barred from objecting to the Arbitrator's authority to do so assuming that good cause were present for such reconsideration. *See Hotel Greystone*, 902 F.Supp. at 485

Award makes no reference whatsoever to the 1993 Award or to the Union's prior complaint which precipitated that award. (*Id.*) Second, the 1997 Award is the product of a complaint against St. George that is separate and distinct from the one that resulted in the 1993 Award. Not only were the two complaints filed more than two years apart, but they were also separated by another complaint seeking enforcement of the 1993 Award filed by the Union in November 1994. (Gringer Aff. Ex. D) Furthermore, each complaint charges St. George with different violations of the Agreement. *Compare* 2/22/93 Notification Letter ("Unjust layoff of all front office clerks; Management doing work of laid off employees; Failure to notify union of layoff; Failure to put employees on checkoff.") (*Id.* Ex. A) *with* 11/16/94 Notification Letter ("Failure of hotel to comply with Arbitrator's Decision # 93–88 [the 1993 Award]; Failure to reinstate Anthony Moore, Audry [sic] Day and Helen Chan, delegate; Failure to pay back wages and benefits; Failure to pay the contractual wages and benefits to all three employees prior to January 1, 1994 to time of layoff.") (*Id.* Ex. D) *with* 4/25/95 Notification Letter ("Failure/refusal to abide by CBA [the Agreement]. Non-union employees doing bargaining unit work while union employees are on layoff (All front desk agents).") (*Id.* Ex. I).

As a final matter, St. George repeatedly presses its claim that the Union acted "improper[ly]" by filing a second and third complaint with Arbitrator, rather than petitioning a court to confirm the 1993 Award. (Def. Reply Mem. at 3) In essence, St. George argues that the Union's petition should be denied to punish the Union for failing "to invoke the proper procedure," *i.e.* seeking confirmation of the 1993 Award in court. (*Id.* at 2) This argument is unpersuasive because it grossly misstates the balance of equities in this case.

St. George conveniently ignores the fact that the Union has already suffered serious consequences by failing to petition to confirm

the 1993 Award in a timely fashion. Since that award was first issued, St. George has refused to reinstate the three union employees or to pay them back wages. (Gringer Aff. ¶ 9) Because the one-year statute of limitations now bars the Union from seeking judicial enforcement of the 1993 Award, it appears unlikely that Helen Chan, Audrey Day, and Anthony Moore will ever receive the relief to which the Arbitrator deemed them to be entitled. For this reason, the issue is not whether the Union should be made to suffer for its failure to petition to have the 1993 Award confirmed, but instead whether the Union should be made to suffer any further as a result of this procedural misstep. On this record, I decline St. George's invitation to sanction the Union in this way.

Moreover, although St. George emphasizes repeatedly that the Union never petitioned to confirm the 1993 Award, St. George ignores the fact that it never petitioned to vacate the 1993 Award despite having the right to do so within 90 days after the award was issued. *See* N.Y. C.P.L.R. § 7511 (McKinney 1980). Of course, St. George had the option under New York law to "omit the motion [to vacate] and wait until the victor moves to confirm the award." J. McLaughlin, Practice Commentary to C.P.L.R. § 7511, at 578–79 (McKinney 1980). Nonetheless, I find it significant that St. George has never raised any challenges to the merits of either the 1993 or 1997 Award. Nor has St. George ever made the claim that the Arbitrator so imperfectly executed his powers, or was so evidently partial against St. George, that either award must be vacated. *See* 9 U.S.C. § 10(a)(2), (4) (West Supp.1997).

To suggest, in St. George's words, that the Union has acted "improper[ly]" and "unjustifiab[ly]" in this matter is to ignore the substantial unfairness to the three union employees arising from St. George's unequivocal refusal to abide by either decision of the Arbitrator. It is not unfair to hold St. George liable for the 1997 Award given that it agreed specifically in Article 26 of the

(based upon "longstanding industry practice ...[between the hotels and the union,] the Impartial Chairman [may] [] reconsider awards for good cause."). The doctrine of *functus officio*

operates merely as a default rule that the parties are free to abandon, either as a matter of standard industry practice, or in a particular arbitration proceeding. *Id.*

Agreement to submit all disputes with the Union to "final and binding" arbitration and that any decisions of the Arbitrator shall "have the effect of a judgment entered upon an award made." (Petition ¶ 5) Instead of abiding by the Agreement, St. George persists in its efforts to subvert that agreement and the labor arbitration process without explanation or apparent justification. St. George's petition to vacate based on the doctrine of *functus officio* is denied.

\* \* \*

For the foregoing reasons, plaintiff's petition to confirm the arbitration award is granted, and defendant's petition to vacate the award is denied. Plaintiff is· to settle judgment on ten days' notice.

SO ORDERED.