*14-3976-cv*
*Chelsea Grand, LLC v. New York Hotel & Motel Trades Council, AFL-CIO*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand fifteen.

Present:

> DEBRA ANN LIVINGSTON ,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges*,
> SIDNEY H. STEIN*
> *District Judge*.

_____

CHELSEA GRAND, LLC,

        *Petitioner-Appellant*,

        v.                                       14-3976-cv

NEW YORK HOTEL & MOTEL TRADES COUNCIL, AFC-CIO,

        *Respondent-Appellee*.

_____

For Petitioner-Appellant:        David B. Rivkin, Jr., Mark W. DeLaquil, Washington, DC

For Respondent-Counter-Claimant-Appellee:
        Barry Neal Saltzman, Danya Ahmed, New York, NY

_____

* The Honorable Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-Appellant Chelsea Grand, LLP ("Chelsea Grand") appeals from the September 29, 2014 order in the Southern District of New York (Crotty, *J*.), following a bench trial confirming the Impartial Chairman's arbitral awards. Chelsea Grand disputes whether jurisdiction exists under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and whether the arbitral awards at issue accord with federal labor policy. We assume the parties' familiarity with the underlying facts and procedural history of the case, and with the issues on appeal, which we describe here only as necessary to explain our decision to affirm.

## I.    Background

In 2003, Chelsea Grand entered into a Hotel Management Agreement with Interstate Management Company, LLC ("Interstate") to operate Chelsea Grand's Hotel ("Hotel"), located on West 25th Street in Manhattan. In 2004, Interstate signed a memorandum of agreement ("2004 MOA") with Respondent-Counterclaimant-Appellee New York Hotel & Motel Trades Council, AFL-CIO ("Union"). By the terms of the 2004 MOA, Interstate "agree[d] to be bound by the Accretion and Card Count/Neutrality provisions of the Memorandum of Understanding dated June 15, 2000 between the Union and the Hotel Association of New York, Inc." JA64. The 2004 MOA took retroactive effect on July 1, 2001, but contained no expiration date.

In January 2007, after an attempt to organize the employees of Chelsea Grand's Hotel pursuant to the card check and neutrality provisions adopted in the 2004 MOA, the Union initiated an arbitration proceeding against Chelsea Grand and Interstate before the Impartial Chairman. The Impartial Chairman initially adjourned the proceeding to allow the Union to

2

correct a defect in notice. The Union supplied proper notice the next day, but Chelsea Grand refused to comply with the terms of the 2001 IWA's card check and neutrality provisions as adopted by the 2004 MOA. Most notably, Chelsea Grand refused to provide the necessary list of employees for the card check.

The Union returned to the Impartial Chairman. In two successive awards, the Impartial Chairman ruled in the Union's favor, deeming Chelsea Grand in violation of its obligations under the 2004 MOA and the substantive IWA provisions it incorporated. The Impartial Chairman reasoned that the 2004 MOA bound Chelsea Grand both as a joint employer and as principal to Interstate. Accordingly, by refusing to comply with the card check and neutrality procedures adopted by the 2004 MOA, and refusing to submit to arbitration proceedings incorporated in the same agreement, Chelsea Grand had violated the 2004 MOA.[1] Chelsea Grand, while reserving the right to challenge the arbitral awards, provided the Union with the list of Hotel employees. The Impartial Chairman verified a card count at the Hotel March 6, 2007.

March 23, 2007, Chelsea Grand filed a petition in New York state court to vacate the arbitral awards. Thereafter, the Union removed the case to the Southern District of New York, where Judge Crotty held a bench trial from July 28, 2008 to August 4, 2008. In an order and opinion dated September 29, 2014, Judge Crotty confirmed the arbitral awards, finding Chelsea Grand bound to, and in violation of, the 2001 IWA. Unlike the Impartial Chairman's awards, which looked to the 2004 MOA to bind Chelsea Grand, the district court relied principally on the 2001 IWA's "accretion clause" to support its conclusion that Interstate bound Chelsea Grand to

---

[1] The Impartial Chairman also suggested that Chelsea Grand had violated the 2006 IWA, pursuant to paragraph 2 of the 2004 MOA, which purports to bind Interstate to "any successor" IWAs. Because the parties agreed before the district court that paragraph 2 did not bind Chelsea Grand, operating instead only as to hotels that were already unionized at the time, we do not rely on the 2006 IWA.

3

the provisions of the 2001 IWA at issue, declining to reach the question whether the 2004 MOA also operated to bind Chelsea Grand.[2]  In the district court's view, Interstate, as operator of two hotels under the 2001 IWA at the time of the IWA's adoption, bound after-acquired properties to the IWA through the "accretion clause."  The district court relied on theories of joint employer and agency to bind Chelsea Grand to Interstate's commitments.  Chelsea Grand filed a notice of appeal on October 20, 2014.  In its briefs on appeal, Chelsea Grand does not contest the district court's determination that Interstate and Chelsea Grand were joint employers and that, by the law of agency, it was Interstate's principal, so we deem these issues waived.  *See Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142, 144 (2d Cir. 2002) (citation omitted).

## II.    Discussion

We review questions of subject matter jurisdiction *de novo*.  *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 436 (2d Cir. 2000).  As to the question whether the Impartial Chairman's awards violate public policy, "[w]hen reviewing a district court's confirmation of an arbitral award, we review legal issues *de novo* and findings of fact for clear error.  *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 267 (2d Cir. 2004) (citing *Pike v. Freeman,* 266 F.3d 78, 86 (2d Cir. 2001)).  We may affirm on any ground found in the record.  *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 117 (2d Cir. 2013).

Section 301 of the LMRA supplies jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).  It is well-established that card check and neutrality agreements with arbitration provisions are contracts within the

---

[2] The "accretion clause" in the 2001 IWA states that an employer that becomes the owner or manager of a hotel in New York City will be required to apply the IWA to that property on the basis of the legal doctrine of accretion.

meaning of § 301.  For example, in *Hotel & Restaurant Emps. Union Local 217 v. J.P. Morgan Hotel*, this Court affirmed jurisdiction over a dispute arising from an agreement between an employer and a union with card check, neutrality, and arbitration provisions similar to those at issue here.  996 F.2d 561, 563 (2d Cir. 1993); *cf. Retail Clerks International Ass'n v. Lion Dry Goods, Inc.,* 369 U.S. 17, 25–28 (1962) (holding that agreements other than full-fledged collective bargaining agreements may be "contracts" within the meaning of § 301).  Our sister circuits have similarly understood § 301 to encompass card check neutrality agreements with arbitration provisions.  *See, e.g.*, *Hotel Emps., Restaurant Emps. Union, Local 2 v. Marriott Corp.,* 961 F.2d 1464, 1468 (9th Cir. 1992); *Georgetown Hotel v. NLRB,* 835 F.2d 1467, 1470–71 (D.C. Cir. 1987); *Mo–Kan Teamsters Pension Fund v. Creason,* 716 F.2d 772, 775 (10th Cir. 1983), *cert. denied,* 464 U.S. 1045 (1984).

To be sure, we may exercise jurisdiction pursuant to § 301 only when a dispute "arises under" a contract.  In *Litton Financial Printing Division of Litton Business Systems, Inc. v. N.L.R.B.*, the Supreme Court stated, in pertinent part, that "[a] postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration."  501 U.S. 190, 205–06 (1991)).  Although this Court has not had occasion to specify what "facts and circumstances" satisfy the *Litton* standard, our sister circuits provide meaningful guidance.  Although there are slight differences between circuits regarding whether only "*material* facts and occurrences," *see South Cent. Power Co. v. Int'l Bhd. of Elec. Workers, Local Union 2359*, 186 F.3d 733, 740 (6th Cir. 1999) (emphasis in original), satisfy *Litton*, all circuits to have reached this issue agree that the "facts and occurrences" must give rise to the grievance at issue.  *See id.*; *Operating Engineers Local Union No. 3 v. Newmont Min. Corp.*, 476 F.3d 690, 693 (9th Cir. 2007); *Trinidad Corp. v. Nat'l Mar. Union of Am., Dist. No. 4, Marine*

5

*Eng's Beneficial Ass'n*, 81 F.3d 769, 773 (8th Cir. 1996); *accord Local 807, Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Brink's, Inc.*, 744 F.2d 283, 286 (2d Cir. 1984) (locating grievance "outside the scope of the collective bargaining agreements" because it arose after their expiration). Lower courts in this Circuit have interpreted *Litton* similarly. *See, e.g.*, *Queens Boulevard 40th Owners Corp. v. Figeroa*, No. 15-cv-1433, 2015 WL 1938185, at *2 (S.D.N.Y. Apr. 22, 2015) (deeming *Litton* satisfied where Plaintiff sought fees incurred during the term of the collective bargaining agreement).

In this case, the events giving rise to the Union's grievance, and forming the basis of the Impartial Chairman's awards, took place while the card check, neutrality, and arbitration provisions adopted by the 2004 MOA were in effect. In January 2007, the Union properly gave notice to Chelsea Grand's Hotel Manager of its intent to organize, and requested the names of Hotel employees for a card check. In refusing to respond to this request, Chelsea Grand violated the card check and neutrality provisions of the 2001 IWA, applicable to Chelsea Grand through the 2004 MOA.

Chelsea Grand argues that the events of January 2007 did not "arise under" the 2001 IWA because the 2001 IWA had expired on June 30, 2006. To be sure, if the 2001 IWA itself were the source of Chelsea Grand's card check, neutrality, and arbitration obligations, then the arbitral awards might fail the *Litton* test. But we agree with the Impartial Chairman that the 2004 MOA, not the 2001 IWA, is the source of these obligations.[3] The 2004 MOA did not incorporate the 2001 IWA, with its June 30, 2006 expiration date, wholesale. Instead, the parties agreed in the 2004 MOA to adopt only particular provisions from the 2001 IWA, subject to no termination date.

---

[3] We do not reach the question whether the 2001 IWA, by virtue of its "accretion" provision, sufficed to bind Chelsea Grand.

In addition to its jurisdictional challenge, Chelsea Grand invokes the National Labor Relation Act's (NLRA) ban on pre-recognition bargaining to argue that the lower court's confirmation of the Impartial Chairman's awards violates federal labor policy. Section 9 of the NLRA requires that a majority of a bargaining unit select a representative before that representative can bind the unit to substantive terms and conditions. 29 U.S.C. § 159; *see also* 29 U.S.C. §§ 157–158; *Int'l Ladies' Garment Workers' Union, AFL-CIO v. N.L.R.B.* (*Bernhard-Altmann*), 366 U.S. 731, 734–38 (1961) (emphasizing NLRA requirement that the bargaining union represent a majority of employees before reaching collective bargaining agreement).

Chelsea Grand presses the argument that the card check, neutrality, and arbitration provisions adopted by the 2004 MOA are "inseparable from" the substantive terms and conditions of the 2001 IWA. Therefore, the argument goes, the arbitration award imposed substantive terms and conditions on Chelsea Grand's employees. But the procedural guarantees embraced in the 2004 Memorandum of Agreement do not depend on the substantive terms and conditions of the 2001 IWA for their meaning or effect. In addition, by the terms of the 2004 MOA, the 2001 IWA's arbitration provision governs only "disputes regarding the interpretation or application of this [2004 MOA]." JA65. Accordingly, Chelsea Grand fails to show "that a clearly defined and dominant public policy militates specifically against the [arbitral] award in question." *Local 97, Int'l Bhd. of Elec. Workers, A.F.L.-C.I.O. v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 125 (2d Cir. 1999).

For these reasons, we affirm the district court's September 29, 2014 order. We have considered Chelsea Grand's remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk