17-1711-cv
Chelsea Grand, LLC v. New York Hotel and Motel Trades Council, AFL-CIO

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of April, two thousand eighteen.

PRESENT: DENNIS JACOBS,
         RICHARD C. WESLEY,
                    Circuit Judges,
         RICHARD K. EATON,[*]
                    Judge.

- - - - - - - - - - - - - - - - - - - - -X
Chelsea Grand, LLC,
         Plaintiff-Counterdefendant-
         Appellant,

         -v.-                                17-1711-cv

New York Hotel and Motel Trades
Council, AFL-CIO,
         Defendant-Counterclaimant-
         Appellee.
- - - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:            Kannon K. Shanmugam, Amy Mason
                          Saharia, Williams & Connolly
                          LLP, Washington, D.C.

---

[*] Judge Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

1

**FOR APPELLEE:**                    Barry N. Saltzman, Andrew D.
                                    Midgen, Pitta LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Crotty, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Chelsea Grand, LLC ("Chelsea Grand") appeals from the judgment of the United States District Court for the Southern District of New York confirming a 2016 arbitration award ("2016 Award") that resolves a labor dispute between Chelsea Grand and the New York Hotel and Motel Trades Council (the "Union"). Chelsea Grand also appeals the district court's dismissal of its declaratory judgment action. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The 2016 Award is the culmination of over a decade of strife between Chelsea Grand and the Union over the hotel's collective-bargaining obligations. In 2003, Chelsea Grand obtained a franchise for the Four Points Sheraton Hotel. Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO, No. 07 Civ. 2614(PAC), 2014 WL 4813028, at *3 (S.D.N.Y. Sept. 29, 2014) ("Chelsea Grand I"). As a condition of the franchise, Chelsea Grand was required to contract with Interstate, a prestige hotel management firm. Id. In January 2004, the Union entered into a Memorandum of Agreement ("MOA") with Interstate. Id. at *6. This agreement bound Interstate and any hotels it owned, operated, or managed, to the card count and neutrality provisions of the 2001 Industry-Wide Agreement ("IWA"). Id. at *8.

As a result of its agency relationship with Interstate, Chelsea Grand, too, is bound to the terms, provisions, and requirements of the IWA.[1] Id. at *12 ("Interstate's

---

[1] On appeal, Chelsea Grand continues to overlay its legal arguments with the perceived unfairness of the IWA and MOU—documents, which (the hotel argues) it never consented to

2

appointment as managing agent for Chelsea Grand was sufficient to support the Union's belief that Interstate had the authority to bind the hotel to the IWA."), aff'd, Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO, 629 F. App'x 152, 155 (2d Cir. 2015) ("Chelsea Grand II") (summary order).  Article 26 of the IWA confers upon the parties the right to demand resolution of any disputes by the Office of the Impartial Chairperson ("OIC"), a labor arbitrator.  See J. App'x at 661.  The IWA includes Addendum IV, which authorizes the OIC to issue "such remedial orders as are consistent with applicable NLRB standards," and to award "monetary or punitive damages."  Id. at 564.

The Union invoked arbitration against Chelsea Grand in 2007, alleging that Chelsea Grand refused to honor labor rights and had subjected its employees to intimidation and threats to avoid unionization.  Id. at 577-85.  The OIC issued successive awards ("2007 Awards") requiring Chelsea Grand to turn over employee documentation necessary to effectuate the bargaining process and imposed a daily penalty of $35,550 until Chelsea Grand complied.  Id. at 574, 577, 581, 583-85.  Chelsea Grand complied with the 2007 Awards but also sued to vacate them.

During that litigation, the parties again convened in a second arbitration, in April 2008.  The resulting OIC award ("2008 Award") ordered further remedies to redress Chelsea Grand's "egregious" misconduct.  Id. at 646-49, 650. Chelsea Grand did not move to vacate the 2008 Award, and the Union never moved to confirm it.  Id. at 656.

---

or signed.  But Chelsea Grand is perpetuating an inaccurate characterization of its contractual relationship with the Union.  Chelsea Grand received the benefit of its bargain – Interstate's brand recognition and hotel management services, which allowed Chelsea Grand to operate in the hotel franchise space in the first place — and it cannot continue to protest what it surrendered in exchange.  See Chelsea Grand I, 2014 WL 4813028, at *11-12 (concluding under agency principles that Interstate acted with apparent authority in negotiating on Chelsea Grand's behalf).

In late 2015, after Chelsea Grand lost its final appeal on the 2007 Awards, see Chelsea Grand II, 629 F. App'x 152, the Union reengaged Chelsea Grand in negotiation for a collective-bargaining agreement and served its Request for Information ("RFI").  Chelsea Grand argued that privacy concerns prevented it from responding fully to the RFI.  Once again, Chelsea Grand and the Union proceeded to arbitration.  After a hearing, the OIC granted the Union "all of the relief it has requested," J. App'x at 666, including: an order for Chelsea Grand to comply with the RFI; enforcement of the 2008 Award, with relief of $35,500 for each day Chelsea Grand failed to produce the requested employee information; and $2.7 million in punitive damages.  Id.  The district court rejected Chelsea Grand's arguments seeking vacatur, and confirmed the 2016 Award in all respects.  S. App'x at 17-18.

Chelsea Grand argues that the OIC manifestly disregarded the law and exceeded its authority under the IWA in issuing the 2016 Award.  "In reviewing a district court's confirmation of an arbitral award, we review legal issues *de novo* and findings of fact for clear error."  Pike v. Freeman, 266 F.3d 78, 86 (2d Cir. 2001).

An arbitral decision rendered under the Labor Management Relations Act ("LMRA") may be vacated if the arbitrator has exhibited a "manifest disregard of law." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 208 (2d Cir. 2002) (internal quotation marks omitted). Judicial inquiry under the "manifest disregard" standard is "extremely limited."  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 934 (2d Cir. 1986); see also Burns Int'l. Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am., 47 F.3d 14, 17 (2d Cir. 1995).  To establish manifest disregard, Chelsea Grand must show the arbitrator made "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law."  Saxis S.S. Co. v. Multifacs Int'l Traders, Inc., 375 F.2d 577, 582 (2d Cir. 1967) (internal quotation marks omitted).

An arbitrator commits manifest disregard of the law when the "governing law alleged to have been ignored by the arbitrators [was] well defined, explicit, and clearly

4

applicable," and the arbitrator "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it."  Westerbeke Corp., 304 F.3d at 209 (first alteration in original) (quoting Merrill Lynch, 808 F.2d at 934); see also N.Y. Tel. Co. v. Commc'ns Workers of Am. Local 1100, 256 F.3d 89, 91 (2d Cir. 2001) (per curiam).  The rule ignored by the arbitrator must be "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator."  Merrill Lynch, 808 F.2d at 933.

Chelsea Grand claims that the principles of New York law applicable to judicial enforcement of arbitration awards clearly governed its labor arbitration with the Union, that there is a one year statute of limitations for confirming arbitral awards, N.Y. CPLR §§ 7510, 7514, and that the OIC ignored these principles by enforcing the terms of the 2008 Award.  Chelsea Grand relies on a series of New York state court decisions to show that a clear rule exists preventing subsequent arbitrations from reopening "stale" awards.  In Board of Managers of Diplomat Condo. v. Bevona, 160 A.D.2d 645, 646 (1st Dept. 1990), the court held that the union could not resubmit an identical grievance to a second arbitration when it had failed to confirm the prior award within the one-year statutory period.  The court in Protocom Devices v. Figueroa, 173 A.D.2d 177 (1st Dept. 1991) stayed a subsequent arbitration premised upon the same claim as a prior arbitration award, notwithstanding that the award was not confirmed within the one year provided by CPLR 7510.  And in Snyder-Plax v. American Arbitration Association, 196 A.D.2d 872 (2d Dept. 1993), the court held that an award was "final and definite for purposes of CPLR article 75" and could not be reopened past the one-year limitations period even though the arbitrator had "retain[ed] jurisdiction solely to resolve any potential disputes concerning the execution of the award."  Id. at 874.

These cases do not establish clearly governing law.  At best, they suggest an "arguable difference regarding the meaning or applicability" of CPLR 7510 between the OIC's ruling and the approach urged by Chelsea Grand.  Merrill Lynch, 808 F.2d at 934.  On its face, CPLR 7510 does not

5

obviously apply: the statute itself addresses *courts*, and the timeliness of petitions to confirm arbitration awards, not *arbitrators*.  N.Y. CPLR § 7510.  And there appears to be genuine disagreement over whether--and to what extent-- the New York procedural rules apply to the IWA-mandated arbitration process.  As the court in Hotel Greystone Corp. v. New York Hotel and Motel Trades Council, AFL-CIO, 902 F. Supp. 482, 485 n.3 (S.D.N.Y 1995), explained:

> The cases relied on by petitioner involved questions of timeliness of a party's application to the federal *court* for intervention, not questions of timeliness of an application to the *arbitrator.* This distinction is significant. Historically, under the LMRA, procedural questions fall within the arbitrator's domain, to be determined with reference to the agreement.

Further, no case establishes how or whether the OIC may retain jurisdiction to determine the scope and amount of relief.  See J. App'x at 657.  Chelsea Grand overstates the scope of Snyder-Plax: it does not categorically bar retention of jurisdiction by arbitrators in contravention of CPLR 7510; the court reached the more modest conclusion that jurisdiction over a purely "ministerial" act such as the computation of interest may not defeat an award's finality.  196 A.D.2d at 874; accord Burns Int'l Sec. Servs., 47 F.3d at 16 ("[T]he reservation of jurisdiction over a detail like overseeing the precise amount of back pay owed does not affect the finality of an arbitrator's award."); see also Morgan Guar. Trust Co. of N.Y. v. Solow, 114 A.D.2d 818, 821-22 (1st Dept. 1985).  These cases do not neatly decide this one: the tasks delegated to the OIC (determining the entitlement to and amounts owed by the Union and Chelsea Grand, respectively) are closer to core responsibilities than "ministerial" ones.

These ambiguities in the applicability of the New York procedural rules and the significance of the arbitrator's retention of jurisdiction confound Chelsea Grand's pursuit of a clear legal rule.  Put another way, they create at least a "barely colorable" justification for the arbitrator's decision.  Westerbeke Corp., 304 F.3d at 218 (affirming an arbitrator's decision as "at least slightly

6

colorable" in recognition of the "strong presumption that the arbitrator has not acted in manifest disregard of the law," even though the arbitrator may have failed to properly apply a damages rule) (citing Fahnestock & Co., Inc. v. Waltman, 935 F.2d 512, 516 (2d Cir. 1991)).

It is also unclear whether the reasoning of Bevona and Protocom Devices apply. Those cases barred the repetition of a second arbitration over the exact same issues resolved in a previous award. However, the issues brought to the attention of the OIC in 2016 were not identical to the circumstances of the 2008 Award (although the Awards are related). Unlike the one-shot termination disputes in Bevona and Protocom Devices, the 2008 and 2016 Awards stem from different sets of violations and concern a long-standing and evolving series of disputes and transgressions. See N.Y. Hotel & Motel Trades Council, AFL-CIO v. Hotel St. George, 988 F. Supp. 770, 774-75 (S.D.N.Y 1997) (declining to treat the validity of a 1997 award following an unconfirmed 1993 award as a statute of limitations question); id. at 782 (noting that the latter award "is the product of a complaint against [the Hotel] that is separate and distinct from the one that resulted in the [prior] Award," and that charges "different violations of the Agreement"). Moreover, the 2016 Award does not threaten to alter the 2008 Award as to issues already litigated in a prior arbitration; instead, it enforces the prior award as it would a contract in the event of a breach. The arbitrator's power to apply an existing award to emerging events is in keeping with the industrial policy of labor arbitration. See generally United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578 (1960); Nat'l Football League Mgmt. Coouncil v. Nat'l Football League Players Assoc., 820 F.3d 527 (2d Cir. 2016).

Chelsea Grand also contends that the OIC exceeded its scope of authority under the IWA and instituted its own brand of industrial justice by ordering remedies that bind Chelsea Grand to the terms of a collective-bargaining agreement with the Union, and penalize it for past misconduct. See Harry Hoffman Printing, Inc. v. Graphic Commc'ns. Int'l Union, Local 261, 950 F.2d 95, 98 (2d Cir. 1991).

7

Our duty on review of an arbitration award "is simply to determine 'whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement.'" N.Y.C. & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of N.Y., Inc., 826 F.3d 611, 618 (2d Cir. 2016) (citation omitted). The award need only "draw[] its essence from the collective bargaining agreement," United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960), and "even a barely colorable justification for the outcome reached" will suffice. Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 704 (2d Cir. 1978); see also N.Y.C. & Vicinity Dist. Council, 826 F.3d at 618 ("[A]s long as the 'arbitrator was even arguably construing or applying the contract and acting within the scope of his authority and did not ignore the plain language of the contract,' the award should ordinarily be confirmed.").

Chelsea Grand argues that the arbitrator exceeded authority in setting rates and benefits at the level of the Wingate Hotel Collective Bargaining Agreement ("Wingate Agreement") for the pendency of the collective bargaining. Citing H.K. Porter Co. v. NLRB, Chelsea Grand submits that an arbitrator cannot violate the freedom of contract by "compel[ling] a company or a union to agree to any substantive contractual provision of a collective-bargaining agreement." 397 U.S. 99, 102 (1970). In H.K. Porter Co., the Supreme Court reversed an arbitral award that had compelled a party to submit to certain terms on the assumption that such terms would have been reached in the course of good-faith negotiation. 397 U.S. at 100-01, 108. Chelsea Grand claims that the circumstances here are analogous because the 2016 Award did not truly afford Chelsea Grand any contractual discretion: the Award obligates Chelsea Grand to reach an agreement and binds it without consent to the results of the Wingate Agreement.

But in contrast to H.K. Porter Co., the arbitrator did not impose upon Chelsea Grand the terms of a finalized collective-bargaining agreement. Rather, the OIC established an *ex ante* position, with the intention that the parties "re-commence[]" the bargaining process to

8

arrive at their own contractual rate.  J. App'x at 665-66 (resetting the "status quo" for employee rates and benefits).  As such, the Wingate Agreement terms are inherently temporary; they shall expire once the parties have completed the collective-bargaining process in good faith and arrived at their own contractual terms, or until they have reached a *bona fide* impasse.[2]  See Mead Corp. v. NLRB, 697 F.2d 1013, 1023-24 (11th Cir. 1983) (distinguishing H.K. Porter Co. from a remedial order that requires a party to "reinstate" an existing status quo and ruling that such an order designed to encourage bargaining in good faith "fully and fairly effectuates the policies of the [National Labor Relations] Act"); see also Franks v. Bowman Transp. Co., 424 U.S. 747, 769 (1976).

Construed in that light, such terms are within a labor arbitrator's well-established remedial authority.[3]  See NLRB

_____

[2] Chelsea Grand's brief contends that it "*has* been bargaining in good faith," but was "penalized anyway." Appellant's Br. at 35 (emphasis in original).  This claim is somewhat at odds with the findings of the OIC, which are not subject to our review.  J. App'x at 664-65 (decreeing that Chelsea Grand "bargain in good faith with the Union" and assigning penalties for its failure to do so); see Westerbeke Corp., 304 F.3d at 213 ("An arbitrator's factual findings are generally not open to judicial challenge, and we accept the facts as the arbitrator found them.")(internal citation omitted); Burns Int'l Sec. Servs., 47 F.3d at 17 ("Having contracted with the Union to resolve disputes through a mutually-acceptable, neutral arbitrator, [a party] is not entitled to have the arbitrator's decision overturned simply because the arbitrator did not" find in its favor.).

[3] The language of the Awards can be overread to say that Chelsea Grand might remain bound to the terms of the Wingate Hotel Agreement even if it reaches an impasse with the union while engaging in good faith collective bargaining.  Cf. H.K. Porter Co., 397 U.S. at 106 (making unlawful a provision that "compel[s] [Chelsea] to agree to a proposal or requires the making of a concession").  To date, the parties have not had a serious opportunity to bargain in good faith, due in part to the eight-year delay

9

v. Staten Island Hotel Ltd. P'ship, 101 F.3d 858, 862 (2d Cir. 1996) ("[T]he requirement that the Company pay former employees at the prior rates was plainly intended to be remedial ... the Board's order requires payment at the prior rates only until the Company negotiates in good faith with the Union...."); NLRB v. Katz's Delicatessen, 80 F.3d 755, 769 (2d Cir. 1996) (In drafting remedial orders, a labor arbitrator "has broad discretion," and "its choice of remedies is subject to limited review"); see also N.Y.C. & Vicinity Dist. Council, 826 F.3d at 618.

The arbitrator was likewise "arguably construing or applying the contract within the scope of his authority" when he awarded monetary and punitive damages for Chelsea Grand's non-compliance with the Union's RFI. N.Y.C. & Vicinity Dist. Council, 826 F.3d at 618. Addendum IV to the IWA unambiguously authorized "monetary or punitive damages," and the arbitrator was charged with the mandate to determine a proper remedy. J. App'x at 124, 127, 657.

True, such damages were not explicitly requested by the Union. But Chelsea Grand points to no direct authority limiting arbitrators to requested remedies. Cf. Harper Ins. Ltd. v. Century Indem. Co., 819 F. Supp. 2d 270, 277-78 (S.D.N.Y. 2011) (Buchwald, J.) ("[T]here is no ... *per se* rule that it is beyond the authority of the arbitrators to issue a remedy directed to an issue squarely before them unless it was requested by one of the parties.").

Finally, Chelsea Grand seeks a declaratory judgment that it "is not bound to any labor agreement with the Union, including without limitation that it has no ongoing obligation under the 2004 MOA to arbitrate disputes with the Union ...." S. App'x at 13. The district court ruled that it lacked jurisdiction to issue a declaratory judgment because there was no "case or controversy." Id. We review *de novo* the district court's determination that it lacks

in concluding litigation over the 2007 Awards. The remedial order in the 2016 Award therefore offers a genuine incentive to begin bargaining once Chelsea Grand produces the requisite employee data per the Union's RFI, but not permanent leverage for the Union in negotiating final terms.

10

subject matter jurisdiction. See Niagara Mohawk Power Corp. v. Towanda Band of Seneca Indians, 94 F.3d 747, 751 (2d Cir. 1996).

To bring an action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between [the] parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (emphasis omitted) (quoting Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). Courts do not entertain declaratory judgment actions to assuage a party's concerns about potential contractual obligation or liability. The dispute "must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 244 (1952). Where "the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed." Browning Debenture Holders' Comm. v. Dasa Corp., 524 F.2d 811, 817 (2d Cir. 1975).

There is little doubt that Chelsea Grand and the Union have numerous disagreements, for example concerning the rates and benefits owed to hotel employees. They may also have different views about each other's legal responsibilities and entitlements under the IWA. Those disagreements, however, are the proper subject of the collective-bargaining process that the parties may pursue in the wake of this Court confirming the 2016 Award.[4] Chelsea Grand's position depends upon the subsequent development of an impasse in collective bargaining, or a

---

[4] We do not read Chelsea Grand's declaratory judgment request as challenging or seeking relief from the terms of the 2016 Award itself, which were confirmed by the district court, and which we affirm again in this order. To the extent Chelsea Grand seeks a declaratory judgment that contradicts the 2016 Award, it is denied.

11

breach of the 2016 Award.  And by its own representations to this Court, Chelsea Grand has pursued collective bargaining in good faith, and has not indicated that it will not abide by the 2016 Award or fall into contempt of court.  See Appellant's Br. at 35.

The emergence of a "live controversy" is therefore dependent upon unknown future actions of the parties once they reach the end of their negotiation.  We do not know the precise nature of the "types of claims that might be asserted in the future" related to a possible arbitration or substantive bargaining terms, and so any dispute is "speculative."  Olin Corp., 5 F.3d at 17; see In re Joint E. and S. Dist. Asbestos Litig., 14 F.3d 726, 731-32 (2d Cir. 1993) ("The fact that [the party seeking declaratory relief] may not be liable to asbestos claimants after reaching a settlement with them does not support a legal claim triggering the court's adjudicative powers when such a settlement has not been reached.").

Chelsea Grand may wish to establish certain legal relations now as leverage in future negotiations with the Union or in aid of its own strategic decisions.  But "a mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction."  S. Jackson & Son, Inc. v. Coffee, Sugar & Coco Exch. Inc., 24 F.3d 427, 431 (2d Cir. 1994).  Declaratory judgment is not a vehicle to advise or relieve the parties of the possible legal consequences of their conduct.  Olin Corp., 5 F.3d at 17 (quoting Coffman v. Breeze Corps., 323 U.S. 316, 324 (1945)).  Chelsea Grand's speculation of future party conduct and the disputes that could arise from that conduct falls short of the "case or controversy" standard.

For the foregoing reasons, and finding no merit in Chelsea Grand's remaining arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK OF COURT

12